## VANE v. NEWCOMBE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 69. Argued and submitted November 6, 1889. — Decided November 25, 1889.

In Indiana, a person who contracts with a telegraph corporation to do the specified work of putting up certain lines of wire on poles, is not an "employé" of the corporation, within the meaning of the act of the legislature of Indiana, approved March 13, 1877, (Laws of Indiana 1877, Special Session, 27, c. 8; also, Rev. Stats. Indiana, §§ 5286–5291,) giving a first and prior lien on the corporate property and earnings of a corporation to its employés, for all work and labor done and performed by them for the corporation, from the date of their employment by the corporation.

Such a lien is not given to him by virtue of the mechanics' lien act of Indiana, of March 6, 1883, (Laws of 1883, 140; Elliott's Supplement of 1889, §§ 1688 and 1690,) unless he complies with that act in regard to describing, in his notice of lien, the lot or land on which the structure stands on which he claims a lien.

By perfecting a claim to his lien under the act of 1877, he waived the right, if any, which he had to a common law lien, as to the personal property and earnings of the corporation.

The poles and wires were real estate on which he could have no lien at common law.

Moreover he gave up any right he had to a common law lien, as to the wires, by giving up possession of them.

ON the filing of a bill in equity, in October, 1884, in the Circuit Court of the United States for the District of Indiana, by The Bankers' and Merchants' Telegraph Company of Indiana, an Indiana corporation, against The Bankers' and Merchants' Telegraph Company of New York, a New York corporation, praying for an accounting between the defendant and the plaintiff as to moneys due by the former to the latter, and for a determination of the relative rights of the parties to certain telegraph lines and property in Indiana, and for the appointment of receivers *pendente lite*, to take possession of the lines and property, an order was made by the court appointing Richard S. Newcombe and James G. Smith receivers of all the lines and property of the plaintiff and the defendant, or either of them, situated within the jurisdiction of the court.

The same persons had been appointed receivers of the defendant, in a suit brought by one Day in the Supreme Court of the State of New York.

In March, 1885, James E. Vane filed in the suit in the Circuit Court an intervening petition. It set forth that in June, 1884, the defendant had employed Vane to put six additional wires on and along the telegraph poles then owned by the defendant, from Freeport, Ohio, to Hammond, Indiana, and to attach such wires to the proper fixtures and appendages to the poles, so that the company might have six additional, independent wires between those places, and agreed with Vane to pay him, as compensation for the work, $45 for every mile of wire put and strung upon the poles, the defendant agreeing to furnish all of the wire and other necessary material, which were to be delivered at the nearest distributive point along the route of the line, and to pay all freight for their shipment to the various points along the route, and to deliver them to Vane free of any charge at such points. The petition further alleged that, in June, 1884, the defendant directed Vane to construct two lines westwardly from Hammond in the direction of Chicago, Illinois; that he proceeded to erect and construct such two lines to a point about ten miles east of the court-house in Chicago; that the defendant had failed to pay the freights on the wire and materials; that Vane, at its request, had furnished money to pay such freights and also money to purchase necessary materials used in making the line; that the defendant had committed other breaches of its agreement with Vane, and in consequence owed him a large sum of money; that he had executed the work in all things as directed by the defendant; that when he had completed the six lines to Lake Station, in Lake County, Indiana, the defendant owed him about $16,000; that he then disconnected the six wires from their westerly connections, and held physical possession of them, for his own protection; that while he so held them, in their disconnected condition, the receivers, Newcombe and Smith, entered into the following agreement with him, in consideration that he would allow the lines to be connected with other lines running westerly into Chicago:

"CHICAGO, ILL., *Nov. 19th,* 1884.

"It is hereby agreed and understood that the telegraph wires on the poles of the Bankers' and Merchants' Telegraph Company in the State of Indiana, which were strung by J. E. Vane, and upon which he claims a lien, shall be connected up with the wires of the said company from Hammond, Indiana, to Chicago, Illinois, now constructed and to be constructed, and shall be used for telegraph business by the receivers of said company; but it is also expressly understood that such use of said wires shall not be construed in any way, or to any extent, as impairing or interfering with the lien of the said Vane thereon.

"RICHARD S. NEWCOMBE,
"JAS. G. SMITH, *Receivers;*"

that, in September, 1884, he caused notice to be given to the defendant of his intention to hold a lien upon its corporate property and earnings, for all work and labor done and performed and all moneys advanced by him to and for its benefit, at its instance and request, and for that purpose filed notices, on the 18th and 19th of September, 1884, in the offices of the recorders of seven counties in Indiana through which the telegraph line runs, the notices being dated September 15, 1884; that the receivers also owed him $1898.33 for work which he did for them after their appointment, in connecting said wires at Lake Station and Hammond with their westward connections, under which employment he erected and completed the wires to a distance of about four miles from the court-house in Chicago, such indebtedness including also the purchase by him of a large amount of materials and the payment of freight bills, and the doing of other work; and that the receivers also owed him other moneys, which he had paid for the wages and expenses of men who performed work for the receivers in respect of the telegraph line, between December, 1884, and February, 1885. The petition prayed for the payment of the claim of Vane out of the first moneys coming into the hands of the receivers, as a superior lien to all claims except those of a like class.

The lien covered by the notices purported to be claimed under the act of the legislature of Indiana approved March 13, 1877. Laws of Indiana, 1877, Special Session, 27, c. 8; also, Rev. Stats. Indiana, 1881, §§ 5286–5291.

Sections 1 and 5 of the act of 1877, being sections 5286 and 5287 of the Revised Statutes, provide as follows:

"SEC. 1. *Be it enacted by the General Assembly of the State of Indiana,* That the employés of any corporation doing business in this State, whether organized under the laws of this State or otherwise, shall be, and they are hereby entitled to have and to hold a first and prior lien upon the corporate property of such corporation, and the earnings thereof, for all work and labor done and performed by such employés for such corporation, from the date of their employment by such corporation; which lien shall lie prior to any and all liens created or acquired subsequent to the date of the employment of such employés by such corporation, except as in this act provided.

"SEC. 2. Any employé wishing to acquire such lien upon the corporate property of any corporation, or the earnings thereof, whether his claim be due or not, shall file in the recorder's office of the county where such corporation is located or doing business, notice of his intention to hold a lien upon such property and earnings aforesaid, for the amount of his claim, setting forth the date of such employment, the name of the corporation and the amount of such claim; and it shall be the duty of the recorder of any county, when such notice is presented for record, to record the same in the record now required by law for notice of mechanics' liens, for which he shall receive twenty-five cents; and the lien so created shall relate to the time when such employé was employed by such corporation, or to any subsequent date during such employment, at the election of such employé, and shall have priority over all liens suffered or created thereafter, except other employés' liens, over which there shall be no such priority: *Provided,* That where any person, other than an employé, shall acquire a lien upon the corporate property of any corporation located or doing business in this State, and such lien remain

a matter of record for a period of sixty days, in any county in this State where such corporation is located or doing business, and no lien shall have been acquired by any employé of such corporation during that period, then and in that case such lien so created shall have priority over the lien of such employé in the county where such corporation is located or doing business, and not otherwise: *Provided, further*, That this section shall not apply to any lien acquired by any person for purchase-money."

The notices of lien filed by Vane were all in the following form, the name of the county being different in each case:

"De Kalb County.

"Notice is hereby given to the Bankers' and Merchants' Telegraph Company, incorporated and organized under the laws of the State of New York, doing business in the county of De Kalb, in the State of Indiana, and all others interested:

"You are hereby notified that I, James E. Vane, hereby intend to hold a lien upon the poles and wires strung thereon, the switch-boards, telegraph instruments and battery, and all other fixtures and property of said company together with all the earnings of said company in said county of De Kalb. I hold this lien for work and labor done and performed and materials furnished in the construction of their line of telegraph through said county, and at their special instance and request, to the amount of sixteen thousand dollars. The labor was performed and materials furnished on and after the 15th day of June, 1884. That he intends to hold this lien upon all the poles, wire strung and unstrung, switch-boards, telegraph instruments and batteries, whether in use or not, and all fixtures and property belonging to said company in said county of De Kalb, together with earnings thereof, until his claim is paid and satisfied.

"September 15, 1884.                    James E. Vane."

The receivers put in an answer to the petition, setting up that, as to so much of it as sought to enforce a lien upon the telegraph property and its rents and incomes, Vane did not

occupy, in his transactions with the defendant, the relation of an employé, but of a general contractor, and was not entitled to claim or enforce a lien; that he was not entitled to a first lien, because, before he filed his petition, the receivers had executed, under an order of the Supreme Court of New York and under the direction of the Circuit Court, receivers' certificates to the amount of $130,000, to be used in the payment of the debts of the defendant, and $20,000 to be used to complete the construction of its telegraph lines, which certificates were made, by an order of said Supreme Court, dated November 3, 1884, and an order of the Circuit Court, dated December 15, 1884, a first charge and lien upon all the property of the defendant within the State of Indiana; that, in pursuance of those orders, the receivers had executed, acknowledged and recorded a mortgage, bearing date November 7, 1884, to secure the payment of the receivers' certificates; that those certificates, to the amount of $150,000, were outstanding in the hands of persons who took them as innocent purchasers without notice; and that, long before the rendering of the services by Vane, the defendant had executed, acknowledged and recorded a general mortgage upon all its property in Indiana as well as the other States through which its lines extended, covering its franchises, rents and profits, to secure an issue of bonds amounting to $10,000,000, which were outstanding, unpaid and in the hands of persons who took the same for value and without notice of any equities against the same. A replication was put in to this answer, and on the 16th of May, 1885, the petition of Vane was referred to a master to take evidence and report the same with his findings thereon.

On the 30th of January, 1886, the master, having taken the evidence produced by the parties, filed his report, containing the following statements:

"Mr. Vane, the petitioner, was employed by the telegraph company to put on arms and insulators and to string additional wires on the poles of the company from Freeport Junction, Ohio, to Lake Station, Indiana, a distance of 248 miles, for $45 per mile. The company agreed to furnish and deliver to Vane, at the nearest accessible railway stations, all the neces-

sary material for the work. Vane was to do or furnish the labor necessary to string the wires, etc. He did the work, hiring men for the purpose and assisting in person. The amount owing to him on this account is eleven thousand one hundred and sixty dollars ($11,160).

"He also put in cross-arms and insulators and strung four wires from Lake Station to Hammond, sixteen miles, at thirty-seven dollars and fifty cents per mile, the company furnishing material and Vane doing or furnishing the labor. The amount owing to him on this account is six hundred dollars ($600).

"He also strung two wires from Hammond to the junction of the Chicago Board of Trade lines, 28 miles, at $20 per mile, for which there is due him five hundred and sixty dollars ($560).

"During the progress of the work the company failed to furnish the material as it was required, so that the men working for Vane were without employment a portion of the time. Vane asked for instructions and was directed by the company to keep his men together during the delay thus caused, it being the understanding that the company would pay their board while they were waiting. The master is of the opinion that it is to be fairly inferred from the evidence that the company would pay for the time thus lost, Vane being required to pay his men as if they were at work.

"Vane also made some advances for freight on material shipped to him, but which he could not obtain possession of until the freight was paid. He also paid out various sums of money for livery hire, telegrams, etc., made necessary by the company's failure to furnish material promptly.

"He also did extra work on the line, at the request of the company, which was not covered by the original agreement. The amount due him for this extra work and for the time of his men lost by delay is $1951.12. The amount due him for cash advanced to pay freight, livery hire, telegrams, etc., is $1298.50.

"August 11, 1884, he was paid $300; September 11, $200: total credits, $500.

"Exhibit No. 1, which was filed March 7, 1885, contains all

the foregoing items in detail, and has been audited and approved by the company. There is no controversy as to the amount. The only real question is as to what preference or lien, if any, has the intervener.

"The master is of the opinion that, in doing this work, Mr. Vane was an employé of the company, within the meaning of section 5286, Revised Statutes of Indiana, 1881. He has filed his notice, as required by section 5287, in the counties through which the telegraph is built.. This lien covers the following items:

" For stringing wires, 248 miles, $45 per mile . $11.160 00
" putting in cross-arms from Lake Station
to Hammond . . . . . . . . . . 600 00
" · stringing 2 ʻwires from Hammond to
Junction, etc. . . . . . . . . . . 560 00
" extra work and delay . . . . . . . . . 1,951 12

$14,271 12
" Deduct credits . . . . . . . . . . 500 00

" Bal. due. .. . . . . . . . . . . $13,771 12

" I find and report that he has no lien as to the sum of $1298.50 for cash paid for freight, livery, etc.

" Vane's claim accrued prior to the order made by the Supreme Court of New York, November 3,.1884, authorizing the issue of $150,000 of special receivers' certificates, to secure which a trust deed or mortgage was executed, and I report and find that for said sum of $13,771.12 Vane is entitled to priority over the lien of the certificates above named.

" Vane also asserts a right to a common law lien, which he bases on the following facts, which are not controverted: The contract with Vane was made in June, 1884. November 12, 1884, the work was practically done, but the connections were not made. Mr. Vane kept possession of the wires by refusing to allow connections to be made, and turned the ends of the wires down into the ground. He retained such possession,

until November 20, 1884, when he delivered possession to the receivers, with an agreement that such delivery was not to impair any rights or liens he might thus have by virtue of such possession. He had such possession when the order allowing the issue of receivers' certificates was made, and also when the certificates were issued, November 11, 1884. I report and find that, by perfecting his claim for a lien under the statute, Mr. Vane waived the right he had, if any, to assert his common law lien.

"In addition there is due to Vane from the receivers, for work done for them, $1898.33. The work was done after the certificates were authorized by the order of November 3, 1884, but before the issue of the certificates issued by subsequent orders. I report and find that for the sum last named Vane should be postponed as to the issue of $150,000 of certificates, but that he should be preferred as to those which were subsequently issued."

In February, 1886, the receivers filed exceptions to the report of the master, because of his allowance to Vane of a lien for the $13,771.12, on the ground that he was an employé of the defendant, within the meaning of section 5286. The exceptions claimed that Vane was a contractor in his agreement with the defendant, and not its employé; that the item of $600 for putting in cross-arms was not covered by his notice of lien nor by the contract under which the labor was performed; and that he had no lien for that service; and they made a like claim in regard to the item of $1951.12.

Vane filed exceptions to the report because the master had found that he was not entitled to a lien for the $13,771.12, paramount to the holders of receivers' certificates and all other mortgage liens; and had not found that Vane was entitled to a paramount lien over all such other liens for the entire amount of $15,069.62; and had deducted the $500 from the $14,271.12, and not from the $1298.50; and had not awarded a lien for the $1298.50.

The case was heard on these exceptions by Judge Woods, holding the Circuit Court. His opinion, delivered in April, 1886, 27 Fed. Rep. 536, recites the material findings of the

master, and then says : " In the opinion of the court, the petitioner had no lien at common law or in equity, and was not an employé of the telegraph company within the meaning of the statute referred to by the master. That statute provides that the employés of any corporation doing business in this State . . . shall be entitled to have and hold a first and prior lien upon the corporate property, . . . and the earnings thereof, for all work and labor done . . . by such employés for such corporation. To be entitled to the benefits of this statute, and others of like character since enacted, I think it clear that the employé must have been a servant, bound in some degree at least, to the duties of a servant, and not, like the petitioner, a mere contractor, bound only to produce or cause to be produced a certain result, — a result of labor, to be sure, — but free to dispose of his own time and personal efforts according to his pleasure, without responsibility to the other party. In respect to the sums found due the petitioner, the report is confirmed, but, to the allowance of a lien, exceptions sustained."

In pursuance of this decision, the court made an order overruling the exceptions of Vane, and sustaining so much of the exceptions of the receivers as related to the claim for a lien in favor of Vane, but confirming the report as to amounts found to be due to Vane. The order adjudged that Vane had no lien upon the property of the defendant for the $15,069.62; that that sum was a general floating debt of the defendant, not entitled to any priority ; but that the $1898.33 was a valid debt of the receivers, payable out of any funds in their hands as such, available for payment of the debts of the trust. Vane appealed to this court from so much of the decree as disallowed his claim for a lien for the $15,069.62, and from the overruling of his exceptions and the sustaining of the exceptions of the receivers.

*Mr. Addison C. Harris* for appellant.

I. Vane had a lien under the statutes of Indiana. The policy of the State is to secure the pay of all persons employed as contractors, material men, laborers or otherwise. *Colter* v.

*Frese,* 45 Indiana, 96. Statutes for the benefit of laborers and the like are also liberally construed in this court. *Davis* v. *Alvord,* 94 U. S. 545; *Mining Co.* v. *Cullins,* 104 U. S. 176. Thus the federal and state courts are in accord in this matter.

The history of a remedial act may be inquired into, in order to ascertain the purpose for which it was enacted. *Platt.* v. *Union Pacific Railroad,* 99 U. S. 48, 60; *United States* v. *Union Pacific Railroad,* 91 U. S. 72, 79; *Maryland* v. *Railroad Company,* 22 Wall. 105, 113; *Railway Co.* v. *Prescott,* 16 Wall. 603, 609. Looking at the various laws enacted in Indiana before 1877, we find that all persons engaged in constructing any building (act of 1853), railroad (1873), boat (1863), or any article of personal property; agistors, attorneys, bailees, warehousemen, etc., were protected by the State. The financial distress of that time fell heavily upon the workingmen, and particularly those whose labor was not secured by statute. Labor incorporated into a telegraph line is as much entitled to protection as if done on a building, railroad or boat, or in a law suit. And in morals, those operating a railroad or factory, seem, to many at least, to have as much claim to protection as those engaged in constructing or repairing the plant itself. Labor creates wealth. And for its encouragement and assurance its value is made a charge on that which it creates. The chief purpose of such statutes is to prevent those persons whose labor is indispensable to the continuance of a corporation from abandoning it, and thus suspending its operations whenever they become alarmed by fear of losing their pay. *Lehigh Coal &c. Co.* v. *Central Railroad,* 2 Stewart (29 N. J. Eq.) 252; *Watson* v. *Watson Manufacturing Co.,* 3 Stewart (30 N. J. Eq.) 588.

The "six months' rule" in railway receiverships reposes upon the same wholesome policy. It seems to have been the purpose of the legislature of 1877 to combine these purposes in one general act, the first section of which is now § 5286 Rev. Stats. Ind. under which the master held Vane had a lien.

This act for the first time introduced the word "employé" into the lien laws of this State. In the embezzlement act of 1865 (acts 1865, Spec. Ses. 204), it was used as embracing the

president, directors, cashier, secretary, treasurer, teller, clerk, bookkeeper, agent and others in the employ of any corporation or person in business. In subsequent criminal statutes it still holds the same place broadened to embrace many other persons. Rev. Stats. 1881, §§ 1944, 1946, 1948, 3645.

It is evident the word was not used in any limited sense in this act; although, if Vane had appropriated the wire before it was strung, he might have been guilty of embezzlement. See *Ritter* v. *State*, 111 Indiana, 324. The word has recently come to us from a foreign tongue, but receives a broader meaning here than it has in its natural home. Its brevity has led to its adoption into our tongue as it comprehends many classes of persons which otherwise we must name, respectively. A half a century ago it was styled an equivocal word. Bayley, J., in *Ripley* v. *Scaife*, 5 B. & C. 167. But it is now in such general use that it is not subject to criticism, and it receives as broad a definition as its common use will warrant. *Hogan* v. *Cushing*, 49 Wisconsin, 169; *Grainger* v. *Aynsley*, 6 Q. B. D. 182; *Mining Co.* v. *Cullins*, *ubi sup.*; *Munger* v. *Lenroot*, 32 Wisconsin, 541; *Watson* v. *Manufacturing Co.*, *ubi sup.*; *Queen* v. *Freke*, 5 El. & Bl. 944; *Woodstock Iron Co.* v. *Richmond and Danville Extension Co.*, 129 U. S. 643; *Gurney* v. *Atlantic & Great Western Railway*, 58 N. Y. 358; *Astor, Petitioner*, 50 N. Y. 363; *Stryker* v. *Cassidy*, 76 N. Y. 50; *Water Co.* v. *Ware*, 16 Wall. 566; *Warren* v. *Sohn*, 112 Indiana, 213.

II. Vane had also a lien at the common law, or in equity.

The principle of the common law is applied to its full limit in Indiana. Rev. Stats. Indiana, 1881, § 5304; *Holderman* v. *Manier*, 104 Indiana, 118 and cases cited; *Darter* v. *Brown*, 48 Indiana, 395; *East* v. *Ferguson*, 59 Indiana, 169; *Hanna* v. *Phelps*, 7 Indiana, 21; *S. C.* 63 Am. Dec. 410. That Vane had help does not destroy the lien. *Shaw* v. *Bradley*, 59 Michigan, 199, 204; *Hall* v. *Tittabawassee Boom Co.*, 51 Michigan, 377.

The title of the New York Company appears to have been a lease or license, which, under the act of incorporation (Rev. Stats. Ind. 1881, § 4166), could not continue for a term exceeding fifty years. Such leaseholds are personal property in that

State. *McCarty* v. *Burnet*, 84 Indiana, 23 ; *Schee* v. *Wiseman*, 79 Indiana, 389 ; *Meni* v. *Rathbone*, 21 Indiana, 454, 466 ; *Cade* v. *Brownlee*, 15 Indiana, 369 ; *S. C.* 77 Am. Dec. 595 ; *Duchane* v. *Goodtitle*, 1 Blackford, 117. In *Boston Safe Deposit & Trust Co.* v. *Bankers' and Merchants' Telegraph Co.*, 36 Fed. Rep. 288, it was held that this very property did not become realty, but remained personalty.

That liens are favored in law, see *Holderman* v. *Manier*, 104 Indiana, 118 ; *Green* v. *Farmer*, 4 Burrow, 2214; *Jacobs* v. *Latour*, 5 Bing. 130 ; *Arians* v. *Brickley*, 65 Wisconsin, 26 ; *Hall* v. *Tittabawassee Boom Co.*, 51 Michigan, 377 ; *Webber* v. *Cogswell*, 2 Canada Sup. Ct. 15 ; *Williams* v. *Allsup*, 10 C. B. (N. S.) 417 ; *Hammond* v. *Danielson*, 126 Mass. 294 ; *Townsend* v. *Newell*, 14 Pick. 332.

The Roman law and the laws of nations drawing their jurisprudence from that source award such liens graciously. And the harsher rules of the English law are being liberalized until now courts and legislatures lend a willing hand to assist the laborer to obtain the price of his hire.

This wholesome equity has been adopted in the operation of railways in this country. *Fosdick* v. *Schall*, 99 U. S. 235; *Miltenberger* v. *Logansport Railway*, 106 U. S. 286 ; *Barton* v. *Barbour*, 104 U. S. 126 ; *Hale* v. *Frost*, 99 U. S. 389 ; *Gilbert* v. *Washington City &c. Railroad*, 33 Gratt. 586 ; *Turner* v. *Indianapolis &c. Railway*, 8 Bissell, 315 ; *Union Trust Co.* v. *Walker*, 107 U. S. 596 ; *Farmers' Loan and Trust Co.* v. *Railroad*, 33 Fed. Rep. 778 ; *Union Trust Co.* v. *Souther*, 107 U. S. 591 ; *Burnham* v. *Bowen*, 111 U. S. 776 ; *Union Trust Co.* v. *Illinois Midland Railway*, 117 U. S. 434 ; *Blair* v. *Railroad Co.*, 22 Fed. Rep. 471.

It is equally applicable to a telegraph line.

III. Lastly, we insist that the arrangement of November 19, 1884, fixed a lien on the property. Vane's accounts had been stated ; his mechanic's liens had been filed, and of course known to Doolittle and the receivers. It was known to every one connected with the management of the line that Vane was holding possession of the six wires for his pay. Vane told Doolittle so, and the agreement made by the receivers recites it.

The receivers wanted the use of the wires. They had no money. This is shown by the insolvency of the company, and the acts of the receivers soon after in inducing the courts to issue receivers' certificates. This agreement was written by Doolittle, the Chicago counsel for the receivers. It was made to induce Vane to yield up possession. They knew he believed it recognized his claim on the wires. It was made in the presence of that assertion. The words are: " It is expressly understood that such use of said wires shall not be construed in any way or to any extent as impairing or interfering with the lien of said Vane thereon." Vane was induced to alter his position by this contract. It is too late, it is believed, in a court of conscience or elsewhere, to interpolate into the contract words so as to make it read: " By surrendering possession, Vane's lien shall not be destroyed, if he has any." *Norris* v. *Williams*, 1 Cr. & Mees. 842; *Perry* v. *Board of Missions*, 102 N. Y. 99; *Payne* v. *Wilson*, 74 N. Y. 348; *Unity &c. Banking Association* v. *King*, 25 Beavan, 72; *Clarke* v. *Southwick*, 1 Curtis, 297; *Gregory* v. *Morris*, 96 U. S. 619; *Pinch* v. *Anthony*, 8 Allen, 536; *Pavy's Case*, 1 Ch. Div. 631.

*Mr. Robert J. Ingersoll*, for appellees, submitted on his brief.

Mr. Justice Blatchford, after stating the case as above reported, delivered the opinion of the court.

It is contended for Vane that he has a lien under section 1 of the act of 1877. (Section 5286 of the Revised Statutes.) That section gives a first and prior lien upon the corporate property of any corporation doing business in Indiana, whether organized under the laws of that State or otherwise, and upon the earnings of such corporation, to its employés, for all work and labor done and performed by them for the corporation, from the date of their employment by it.

It seems clear to us that Vane was a contractor with the company, and not an employé within the meaning of the statute. We think the distinction pointed out by the Circuit

Court is a sound one, namely, that to be an employé within the meaning of the statute Vane "must have been a servant, bound in some degree at least to the duties of a servant, and not," as he was, "a mere contractor, bound only to produce or cause to be produced a certain result, — a result of labor, to be sure, — but free to dispose of his own time and personal efforts according to his pleasure, without responsibility to the other party."

It is to be noted that the statute gives a lien to employés of the corporation only for work and labor done and performed by them for the corporation. It does not give a lien for the value of materials furnished, nor for advances of money made. It is confined to work and labor done and performed, and to work and labor done and performed by employés of the corporation, and to work and labor done and performed by employés of the corporation for the corporation.

In this respect there is a marked difference between the provisions of section 5286 and the provisions of section 15 of the act of March 8, 1879, (Laws of 1879, 22; § 5471 of the Revised Statutes of 1881,) which gives a lien, in coal mines, on the mine "and all machinery and fixtures connected therewith, including scales, coal-bank cars, and everything used in and about the mine" to "the miners and other persons employed and working in and about the mines, and the owners of the land or other persons interested in the rental or royalty on the coal mined therein," "for work and labor performed within two months, and the owner of the land, for royalty on coal taken out from under his land, for any length of time not exceeding two months." This miners' statute gives a lien to all persons "employed and working in and about the mines," for work and labor performed by them, without stating that they must be employés of the owners of the mine, or of the persons working it, or of the persons owning the machinery and fixtures, and without stating that they may not be persons working in and about the mine employed by contractors doing work under contract for the owners of the mine or for the owners of the machinery and fixtures.

The general mechanics' lien law of Indiana (§ 5293 of the

Revised Statutes of 1881), subsequently re-enacted by the act of March 6, 1883, Laws of 1883, 140, provided that " mechanics, and all persons performing labor or furnishing materials for the construction or repair, or who may have furnished any engine or other machinery for any mill, distillery, or other manufactory, may have a lien separately or jointly upon the building which they may have constructed or repaired, or upon any buildings, mill, distillery, or other manufactory for which they may have furnished materials of any description, and on the interest of the owner in the lot or land on which it stands, to the extent of the value of any labor done or materials furnished, or for both." This mechanics' lien statute gives a lien upon a building to all persons who perform labor or furnish materials for the construction or repair of the building, even though they do it under a contract, and is not confined to employés of the owner of the building; and it also gives a lien upon a manufactory to persons who may have furnished machinery or materials for the manufactory, even though they may have done so under contract with the owner of the manufactory or under contract with the contractor with such owner.

The Supreme Court of Indiana, in *Colter* v. *Frese*, 45 Indiana, 96, in 1873, in construing that statute, which was section 647 of the then existing Revised Statutes, held that a person who furnished materials, not to the owner, but to the contractor, for the erection of a new building, could acquire and enforce a lien on the building, and on the interest of the owner of the land on which the building stood, to the extent of the value of the materials furnished.

In view of these provisions of other lien statutes of Indiana, the limited language of section 5286 is very marked, and justifies the interpretation that the provisions of that section are to be confined to a special class of persons. It is a rule of interpretation recognized by the Supreme Court of Indiana, in *Stout* v. *Board of Commissioners*, 107 Indiana, 343, 348, that " in cases of doubt or uncertainty, acts *in pari materia*, passed either before or after, and whether repealed or still in force, may be referred to in order to discern the intent of the legislature in the use of particular terms, or in the enactment of

particular provisions, and, within the reason of the same rule. contemporaneous legislation, not precisely *in pari materia*, may be referred to for the same purpose."

The view above taken of the statute under consideration is supported by adjudged cases. In *Aikin* v. *Wasson*, 24 N. Y. 482, in 1862, it was held that a contractor for the construction of part of a railroad was not a laborer or servant, within the provision of the general railroad act of New York, making stockholders of a railroad corporation personally liable "for all the debts due or owing to any of its laborers and servants, for services performed for such corporation."

In *Munger* v. *Lenroot*, 32 Wisconsin, 541, in 1873, under a statute which gave a lien on logs or timber, for the amount due for his labor or services, to any person who did or performed any work or services in cutting, felling, hauling, driving, running, rafting, booming, cribbing, or towing such logs or timber, it was held that such person was entitled to such lien, not only when employed by the owner of the logs or of the land from which they were cut, but also when employed by a contractor under such owner. The court was of the opinion that the legislature intended to give the lien absolutely to the laborer, regardless of the question whether he had rendered the services under a contract with the general owner or not. This decision was based upon the special language of the statute, in not excluding a person employed by a contractor.

In *Wakefield* v. *Fargo*, 90 N. Y. 213, in 1882, it was held that a person employed by a corporation, at a yearly salary, as a bookkeeper and general manager, was not a laborer, servant, or apprentice, within the provisions of a statute of New York making the stockholders of the corporation "liable for all debts that may be due and owing to their laborers, servants and apprentices for services performed for such corporation." The view taken by the court was that the services referred to were menial or manual services; that he who performed them must be of a class who usually looked to the reward of a day's labor or service for immediate or present support, from whom the company did not expect credit, and to whom its future ability to pay was of no consequence, one who was responsible for

no independent action, but who did a day's work or a stated job under the direction of a superior; that the word "servant" must be limited by the more specific words "laborer" and "apprentice," with which it was associated, and be held to comprehend only persons performing the same kind of service that was due from laborers and apprentices; and that a general manager was not *ejusdem generis* with an apprentice or laborer.

In *Gurney* v. *Atlantic & Great Western Railway*, 58 N. Y. 358, in 1874, a case relied on by the appellant, a receiver of a railroad company was directed by an order of court to pay out of moneys in his hands "arrearages owing to the laborers and employés" of the company "for labor and services actually done in connection with" the company's road. Claim was made by a counsellor-at-law for professional services as counsel for the railroad company, rendered prior to the appointment of the receiver. The question raised was whether the language of the order covered employés who had not been in the stated and regular employment of the company. The court held that, in view of the special language of the order, it included the claim for the professional services. It appeared that the order was made as the result of negotiations in regard to which the counsel under whose advice the order was obtained testified that the word "employés" was used in the negotiations "not in any particular or strict sense, but according to its ordinary and general meaning, as including attorney's compensation as well as that of other persons employed by the corporation." The decision appears to have gone upon the ground that the person who made the claim had rendered "services" in connection with the railroad, and was consequently an employé within the meaning of the order.

We are, therefore, of opinion that Vane had no lien under the act of March, 1877, § 5286 of the Revised Statutes.

It is further contended that Vane had a lien by virtue of the general mechanics' lien law, before referred to, which was re-enacted by the act of March 6, 1883, Laws of 1883, 140; Elliott's Supplement of 1889, §§ 1688 and 1690, in the following language:

"SECTION 1. *Be it enacted by the General Assembly of the*

*State of Indiana,* That mechanics, and all persons performing labor or furnishing material or machinery for erecting, altering, repairing, or removing any house, mill, manufactory, or other building, bridge, reservoir, system of water-works, or other structure, may have a lien, separately or jointly, upon the house, mill, manufactory, or other building, bridge, reservoir, system of water-works or other structure, which they may have erected, altered, repaired, or removed, or for which they may have furnished material or machinery of any description, and on the interest of the owner of the lot or land on which it stands, or with which it is connected, to the extent of the value of any labor done or materials or machinery furnished, or both."

"Sec. 3. Any person wishing to acquire such lien upon any property, whether his claim be due or not, shall file in the recorder's office of the county, at any time within sixty days after the performing of such labor or furnishing such materials or machinery, notice of his intention to hold a lien upon such property for the amount of his claim, specifically setting forth therein the amount claimed, and giving a substantial description of such lot or land on which the house, mill, manufactory, or other building, bridge, reservoir, system of water-works, or other structure may stand or be connected with, or to which it may be removed. Any description of the lot or land in a notice of lien will be sufficient, if from such description or any reference therein, the lot of land can be identified."

In regard to this it is sufficient to say that the notice of lien filed by Vane in September, 1884, did not comply with section 3 of the statute, in regard to a description of the "lot or land" on which the structure stood upon which he claimed a lien.

A common law lien and an equitable lien are also claimed. As to the common law lien the master reported "that, by perfecting his claim for a lien under the statute, Mr. Vane waived the right he had, if any, to assert his common law lien." We concur in this view, as to the personal property and earnings of the corporation. As to the poles and wires they were real estate, on which there could be no lien, at common law.

In addition to this, Vane gave up any right he had to a common law lien as to the wires, by giving up possession of them on November 19, 1884. The lien referred to in the paper of that date, signed by the receivers, as a lien claimed by Vane, was the statutory lien which he had attempted to secure by his notice dated September 15, 1884. Nor do we see any ground for saying that he had or retained an equitable lien.

It is also claimed that the instrument of November 19, 1884, fixed a lien upon the property. We do not so understand it. It conferred no new right upon Vane. It only refers to such lien, if any, as existed, — to a lien claimed by him. Where it speaks of " the lien of the said Vane," it refers to what it had before spoken of as the lien claimed by him. The purport of the paper is simply that the use of the wires by the receivers shall not be construed as impairing or interfering with the lien claimed by Vane, that is, with any lien which existed under the statute under which he had given and filed his notices, dated September 15, 1884.

*Decree affirmed.*