THE STATE, J. HILL BROWNING ET AL., PROSECUTORS, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BERGEN.

Submitted March 19, 1909—Decided June 7, 1909.

The resolution of the board of freeholders of Bergen county providing for the construction of a bridge over the Hackensack river, between certain streets in Hackensack and Ridgefield Park, is a valid exercise of the power conferred by chapters 16 and 64 of the laws of 1906.

On writ of *certiorari.*

Before Justices REED, TRENCHARD and MINTURN.

For the prosecutors, *Griggs & Harding.*

For the defendants, *Luther A. Campbell* and *William B. Gourley.*

The opinion of the court was delivered by

MINTURN, J.    Under the provisions of laws 1892, page 308, as amended in 1902, page 360, and in 1906, page 53, and again in 1908, page 153, the board of chosen freeholders of the county of Bergen undertook, upon the report of a committee of the board recommending it, to build a bridge over the Hackensack river between Railroad avenue in Ridgefield Park, and Riverview place in Hackensack, and for that purpose passed a resolution on November 2d, 1908, at a regular meeting, setting forth that the construction of such a bridge was "necessary," "advisable" and "a public necessity." The resolution further provided that the cost of the proposed bridge should not exceed $158,000. Plans and specifications for the construction of the bridge had been ordered and adopted, and proposals or estimates for doing the work in accordance therewith were duly advertised for and received. On July 24th, 1908, the proposals were received, and on October 29th, the

committee of the board to whom the bids were referred reported unanimously in favor of accepting the bid of F. R. Long Company for the sum of $153,185.13. At the July meeting five bids were received, one of which was rejected because unaccompanied by the certified check required by the specifications. Of the others, the F. R. Long Company was the lowest, and announcement of the amount of the respective bids was made by the clerk of the board at that meeting. The bids, in addition to the sum in bulk bid for the work, contained unit prices for additions and deductions in the work, as necessity or economy might require the board to make.

The prosecutors as taxpayers challenge the legality of the board's action. Section 1 of the act of 1906, page 93, authorizes and empowers the board of chosen freeholders, "whenever in any county of this state it shall be necessary or advisable to erect a bridge," to so declare by resolution, to be adopted by not less than a majority of all the members of the board. There can be no question seriously made that, under this provision, the power to determine the advisability of and necessity for a bridge over the river, was vested by the legislature in the board, and unless this discretion can be shown to be illegally or fraudulently exercised, it cannot be disturbed. *State* v. *Freeholders of Essex*, 3 *Zab.* 214; *McKinley* v. *Freeholders of Union*, 2 *Stew. Eq.* 164; *Ferguson* v. *Passaic*, 31 *Vroom* 404.

The prosecutor insists that the board illegally exercised the power vested in them, because the bidders did not base their estimates upon similar work, and were not upon an equal footing in that regard. The force of this objection is derivable from the fact that, after the bids had been received, the board of chosen freeholders found it necessary, upon the ground of economy and practical construction, to order some changes to be made in the work. The specifications required the bidders to state their price for constructing the entire bridge, and reserved to the board the right to extend or diminish the amount of work to be done, and for that purpose required the bidder to state a unit price upon certain material and classes of work therein specified. The original plan required six-

teen spans on the westerly side of the river, between the westerly terminus, of the bridge and the last abutment. It was concluded by the board to substitute an embankment for these spans, and the original embankment provided for in the plans was changed in accordance with the reservation contained in the specifications. It is difficult to perceive how any bidder could be misled under these circumstances. The very purpose of calling for a unit price might indicate to any intelligent bidder a desire upon the part of the board to use it as occasion might require in the extension or for changes or alterations of the work. But specific and express notice of the fact was conveyed to the bidder in the reservation contained in the specifications, and the board were within their rights in exercising this power as public convenience or necessity might require, so long as the changes thus made produced no radical departure from the original scheme. We are not concerned to know the public reasons which made this change of plan seem judicious or necessary, for the prosecutors do not attack the *bona fide* intent of the board by testimony or by argument. It is significant, however, in this connection to remember that the effect of the change was to reduce the proposed cost of the bridge by over $12,000 below the lowest bulk estimate. It is also to be remarked that the interest of the county was properly safeguarded by requiring bids in this dual form, for it can well be imagined that without such a guarantee an accepted bid, upon a bulk basis in the event of necessary changes thereafter found to be necessary, might leave the county in a quagmire of dispute and litigation.

Our attention is next called by the prosecutor to the claim that the board had no power to erect this structure at the points mentioned, because it cannot at present be joined by any existing public highway. It is a sufficient answer to this objection to state that we consider the testimony makes it manifest that the proposed bridge can and will be so joined to existing thoroughfares. Railroad avenue in Ridgefield Park on the east side of the river is an established highway, and Henry place and Riverview place on the west side of the river, it is quite clear from the testimony, are dedicated streets,

which have been laid out and mapped by one Schmultz, the owner of the fee, and the map so made has been duly filed. The owner of the fee, it appears, has sold land abutting upon the streets thus dedicated, according to the map filed. In addition to this, Schmultz has executed what may be termed a *quasi* declaration of trust to the county, conferring upon it an absolute right to the use of the streets thus dedicated, and finally the village of Hackensack has, through its proper committee, adopted a resolution providing for the general improvement of the public street known as Henry place, which will be an approach to the proposed bridge, provided that the bridge can be constructed as intended, with its westerly outlet at that point. It requires but a meagre citation of authorities to make it manifest, that here we have all the necessary *indicia* of a dedication, upon which the public authorities have the right to act, in furtherance of the performance of a public duty. *Trustees* v. *Hoboken*, 4 *Vroom* 14; *Mayor and Council* v. *Morris Canal Co.*, 1 *Beas.* 547.

We do not find it necessary, therefore, to determine the contention raised and elaborated by counsel for the prosecutors as to the legal inability of the county to construct a bridge without a public approach, and leading on either side to private land, for the reason that we do not perceive that it arises on the facts of this case. In our judgment, chapter 16 and chapter 64 of the laws of 1906, affecting a cognate question, must be read in *pari materia*. *Vane* v. *Newcombe*, 132 *U. S.* 220; *United States* v. *Freeman*, 3 *How.* (*U. S.*) 556; *Black Interp.* 204.

We conceive, therefore, that ample power is conferred by both acts not only to construct the bridge with its necessary abutments and approaches, and to empower the county to issue bonds for the payment of the cost thereof, but to authorize the condemnation of land if necessary for the purpose, which land may be condemned so far as this statutory enactment is concerned, after the board has resolved to construct the bridge.

We see nothing of force in the contention that, because the federal war department did not give its assent to the construc-

tion of the bridge in accordance with the plans until December 12th, 1908, the resolution in question is invalid. The giving of such assent is a mere regulation for the protection of commerce and navigation, and the facts that it was given, as appears in the record, eliminates from the case the necessity of discussing the propriety of procuring it as a condition precedent to the passage of the resolution in question. Nor is there any force in the contention that the proposals were ambiguous regarding the kind of cubic yards of embankment required, and it is enough to say, in answer to this contention, that no bidder appears to have been misled by any such alleged ambiguity. We have examined the remaining reasons urged by the prosecutor as grounds for setting aside this resolution, and find that they contain nothing of such a substantial nature, not already incidentally adverted to or discussed, as to require further elaboration.

The resolution in question is affirmed, with costs.