Hart, J.
 

 The determination of this controversy turns upon the construction to be given to the Unemployment Compensation Act, Sections 1345-1 to 1345-35, inclusive, General Code (116 Ohio Laws, pt. 2, 286,
 
 *131
 
 amended, 117 Ohio Laws, 289, and 118 Ohio Laws, 259, 721), as applied to the facts presented by the record.
 

 Section 1345-1, General Code, of the amended act, containing definitions, then provided:
 

 “b (1) ‘Employer’ means any individual or * * * corporation * * # who [which]- has * * * in
 
 employment
 
 three or more individuals at any one time within the current calendar year * * *. Each individual employed to perform or to assist in performing' the work of any agent or employee of an employer shall be deemed to be employed by such employer for all the purposes of this act, whether such individual was hired or paid directly by such employer or by such agent or employees, ’provided the employer had actual or constructive knowledge of the work * * *.
 

 “c. ‘Employment’ means service, including
 
 service
 
 performed in interstate commerce,
 
 performed for remuneration under any contract of hire,
 
 written or oral, express or implied. The term ‘employment’ shall include an
 
 individual’s
 
 entire
 
 service
 
 performed within or both within and without the state * * *.
 

 “(D) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the administrator that (i) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact, and (ii) such service is outside the usual course of the business for which such service is performed, and (iii) such individual is customarily engaged in an independently established trade, occupation, profession, or business.
 

 “(E) The term employment shall not include
 
 -.* ■**
 

 “(7) Service performed by an individual for one or more principals who is compensated on a commission basis, and
 
 who in the performance of the work is master of his ■ own time and efforts, and whose- re
 
 
 *132
 

 muneration is wholly dependent on the amount of effort he chooses to expend.
 
 * * *
 

 “e. ‘Wages’ means remuneration payable to an employee by each of Ms
 
 employers *
 
 * *.
 

 “f. ‘Remuneration’ means all compensation payable for
 
 personal services,
 
 * # (Italics ours.)
 

 Section 1345-4 (a) (1) (117 Ohio Laws, 294), then provided:
 

 “* * *
 
 Such contributions shall become due and be paid
 
 by each employer
 
 * * * and shall not be deducted, in whole or in part, from the remuneration
 
 of individuals in his
 
 employ.” (Italics ours.)
 

 Section 1345-4 then provided:
 

 “(b) Each employer shall pay contributions equal to the following percentages of
 
 wages
 
 payable by him
 
 with respect to employment: *
 
 * *
 

 “(2) During the calendar year 1937, with
 
 respect to wages payable for employment
 
 during that period, an amount equal to one and eight-tenths per cent of such
 
 wages.
 

 “ (3) During the calendar year 1938 and thereafter, to and including December 31, 1941,
 
 with respect to wages payable for employment
 
 during such years, an amount equal to two and seven-tenths per cent of such
 
 wages.”
 
 (Italics ours.)
 

 The appellant claims that the owner-operators of motor vehicle equipment hired by it were independent contractors and that the state Unemployment Compensation Act had no application to them, with the result that the assessments against it are null and void; that “wages” with respect to “employment” only were taxed, and that these owner-operators did not earn “wages” but indivisible compensation under a contract which called for both personal service and the used of equipment, furnished by them.
 

 On the other hand, the appellees contend that even though the owner-operators were independent con
 
 *133
 
 tractors, as found by the Common Pleas Court and as conceded by the Court of Appeals in its opinion herein, nevertheless, they were employees within the definition of “employment” under the statute, and that a part of their compensation was “wages” which could be segregated by estimation from the total compensation paid.
 

 The sole issue for consideration here is whether these independent contractors were in “employment” by the appellant under the Unemployment Compensation Act. The trial court resolved that issue in favor of the appellant. While the Court of Appeals did not take issue with the Common Pleas Court as to the relationship between the parties, as found by both courts in the former case, it took the view that the appellant was, nevertheless, amenable to the Unemployment Compensation Act because of the provisions of Section 1345-1 b, General Code, and especially because of the tests provided in Section 1345-1 c (D), General Code.
 

 This court is of the view that the relationship between the parties in this case was that of principal and independent contractor. It remains to be determined whether the relationship places the owner-operators within the term “employment” as used in the Unemployment Compensatoin Act.
 

 Under Section 1345-1 b (1), if the owner-operator was an employee of the appellant, all his employees and assistants were, likewise, deemed to be employed by the appellant since “each individual employed to perform or to assist in performing the work of any * * * employee of an employer shall be deemed to be employed by such employer for all the purposes of this act, whether such individual was hired or paid directly by such employer or by such agent or employees, provided the employer had actual or constructive knowledge of the work.” Such interpretation would
 
 *134
 
 require the appellant to report the payroll and pay premiums on the wages of all the employees of such independent contract truckers regardless of the number or character of service of such employees. There would be manifest injustice in requiring the principal to pay premiums to take care of the unemployment of an employee of the independent contractor whose failure to furnish employment was the real occasion for a claim against the fund on the part of such employee.
 

 Furthermore, if any independent trucker employed in his service under his contract three or more employees, he, also, would be amenable to the act, with the result that double premiums would become due and payable on the wages of the same employees. Such a result argues strongly against the claim that such independent contract truckers were “employees” of the appellant under this act. In the case of
 
 Texas Co.
 
 v.
 
 Higgins,
 
 118 F. (2d), 636, Judge Learned Hand, in speaking for the court which held that an independent contractor was not covered as an employee under the federal Social Security Act, said: “A persuasive reason for this conclusion, at least in the case at bar, is that Congress could scarcely have meant a man doing a business like Thomas’s to enjoy the benefit of unemployment allowances; and if he was not an ‘ employee, ’ his four assistants were not; the servant of a servant may be the master’s servant, but the servant of an ‘independent contractor’ is not.
 
 United Gas Improvement Co.
 
 v.
 
 Larsen,
 
 3 Cir., 182 F., 620.”
 

 Again, under Section 1345-1 c, General Code, the term “ ‘employment’ means
 
 service
 
 * * * performed for remuneration under any contract of hire * * *. The’ term ‘employment’ shall include an
 
 individual’s
 
 entire
 
 service
 
 * * (Italics ours.) This court in construing the term “hire,” as used in the phrase “contract of hire” in the Workmen’s Compensation Act, has heretofore held that it is “price, reward or com
 
 *135
 
 pensation paid for personal service or for labor.”
 
 Coviello
 
 v.
 
 Industrial Commission,
 
 129 Ohio St., 589, 196 N. E., 661. See, also,
 
 Texas Co.
 
 v.
 
 Wheeless,
 
 185 Miss., 799, 187 So., 880.
 

 The distinction between tbe relationship of master and servant and that of principal and independent contractor is based primarily upon the extent of control which the master or principal exercises in the performance of the undertaking, and over the physical conduct of the servant or independent contractor. Restatement of Agency, 11, Section 2; 27 American Jurisprudence, 488, Section 7; 21 Ohio Jurisprudence, 626, Section 4.
 

 In the case at bar there was no authority upon the part of the appellant to hire or discharge employees of the owner-operators. This test has been held to be decisive of the liability of the employer for assessments under the federal Social Security Act. See
 
 Williams
 
 v.
 
 United States,
 
 126 F. (2d), 129;
 
 McCain, Commr. of Labor,
 
 v.
 
 Crossett Lumber Co.,
 
 — Ark., —, 174 S. W. (2d), 114.
 

 It is further claimed by appellees that the definition of “employment” has been broadened by the express terms of, or by inferences to be drawn from, the application of the three tests provided by Section 1345-1 c (D), General Code, under which tests, it is claimed, the employer must qualify in order to be exempt from the act. This part of the section which did not come into' the act until its amendment, effective August 7, 1937, provided that exemption can be claimed only when it is shown (i) that the person employed is free from control or direction over the performances of his services; (ii) that such service is outside the usual course of the business for which such service is performed; and (iii) that such individual is customarily engaged in an independently established trade, occupation, profession or business.
 

 
 *136
 
 In the opinion of the court, these provisions are not intended as a substitute definition of “employment.” These tests do not serve to widen the scope of the term “employment” as used in the statute so as to include therein persons not otherwise included, but their function is to exclude from the definition of the term ‘ ‘ employment” persons who might, except for the application of these tests, be included therein. These tests serve to exclude persons who perform incidental service and who, but for such limitations, might be classed as employees of the person for whom such incidental service is rendered. The smith who shoes the horses of a drayman, the car washer who washes his truck or the watchmaker who repairs his watch, furnish examples. The smith, the car washer and the watchmaker are by these provisions taken out of the category of “employees” under the act, notwithstanding their relationship to the one who employs them. The limitations of this part of the section had no application to one who stands in the relationship of an independent contractor, but to one who, although hired for a special purpose, was outside the definition of an employee or servant. Unless this is the interpretation to be given *to paragraph c (D) of the statute in question, it becomes meaningless because the definition of “employment” as it relates to an employee was fully covered under paragraph c of the same section.
 
 Ozark Minerals Co.
 
 v.
 
 Murphy,
 
 304 Ill., 94, 51 N. E. (2d) 197;
 
 Texas Co.
 
 v.
 
 Bryant, Commr.,
 
 178 Tenn., 1, 152 S'. W. (2d), 627. See
 
 Schatz, Pollack Woolen Co., Inc.,
 
 v.
 
 Murphy, Dir.,
 
 384 111., 218, 51 N. E. (2d), 147.
 

 The case of
 
 Schatz, Pollack Woolen Co., Inc.,
 
 v.
 
 Murphy, Dir., supra,
 
 a very recent unemployment compensation case, gives consideration to the interpretation which is to be given to the so-called “three tests” contained in the Illinois statute in language similar to that in the Ohio statute. There the employer’s usual
 
 *137
 
 course of business was that of selling- woolens to the tailoring trade. The question involved was whether a window washer employed by the employer a part of one day each week to wash the windows of the employer’s store was within the scope of the so-called three tests named in the statute as exempting the employment from the Unemployment Compensation Act. The Supreme Court of Illinois held that the window washer was free from the direction of the store proprietor over the performance of service as a window washer; that such service was outside the usual course of the business of the store proprietor; that the window washer was engaged in an independently established trade, occupation, profession or business ; and that while he was in a sense within the employment of the proprietor, he was nevertheless within the purview of the three tests exempting such an employee from the Unemployment Compensation Act. See
 
 Bert Baker, Inc.
 
 v.
 
 Ryce,
 
 301 Mich., 84, 3 N. W. (2d), 20.
 

 It must be conceded that the assessment of premiums, under the Unemployment Compensation Act, is made upon “wages” resulting from employment. It seems untenable, in the absence of legislation for that purpose, to claim that any part of compensation paid for transportation involving the use of a truck and the service of its operator can be segregated and designated as “wages.” The General Assembly has not seen proper to make any provision for this very important determination, if permissible. On the other hand, the problem must be one of such frequent occurrence that it can scarcely be said to have escaped the attention of the statute makers if they had intended to recognize such a computation of wages in such cases. This court should not be called upon to supply any such omission, on the part of the General Assembly, if it was an omission.
 
 Yellow Cab Co. of D. C., Inc.,
 
 v.
 
 *138
 

 Magruder, Coll.,
 
 49 F. Supp., 605;
 
 Lake Shore Electric Railway Co.
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 311, 154 N. E., 239.
 

 The assessments under the Ohio Unemployment Compensation Act are made to match or complement a like contribution under the federal Social Security Act. Section 1345-34, General Code, a section of the act under consideration discloses that the General Assembly understood that its legislation was to aid in effecting a national plan of unemployment compensation, and in connection with its adoption observed that “the imposition of the contributions herein imposed upon Ohio industry alone without a corresponding tax imposed upon all industry in the United States would, by the penalty upon Ohio industry, defeat the purposes of this act.’’ If, under the circumstances of this case, the federal courts should hold that the federal act does not apply to the situation here presented on the ground that the owner-operators were not employees of the appellant, this court would feel disposed to follow the holdings of the federal courts on this question. It would be anomalous and discriminatory to require an employer to pay the state unemployment assessments and not enjoy the corresponding benefits of the federal act.
 

 An examination discloses that the federal courts under circumstances similar to those of the case at bar, hold that there is no master and servant relationship and that the employer is not amenable to the act.
 
 Mutual Trucking Co.
 
 v.
 
 United, States,
 
 51 F. Supp., 114;
 
 Texas Co.
 
 v.
 
 Higgins, supra; Williams
 
 v.
 
 United States, supra; Indian Refining Co.
 
 v.
 
 Hallman, Coll.,
 
 31 F. Supp., 455, affirmed, 119 F. (2d), 417;
 
 Midwest Haulers, Inc.,
 
 v.
 
 Brady, Coll.,
 
 128 F. (2d), 496;
 
 Radio City Music Hall Corp.
 
 v.
 
 United States,
 
 135 F. (2d), 715;
 
 Yellow Cab Co.
 
 v.
 
 Magruder, supra.
 

 The most recent pronouncement on this subject by a
 
 *139
 
 state court of last resort, having under consideration an Unemployment Compensation Act similar to that of this state, is to be found in the case of
 
 Ozark Minerals Co.
 
 v.
 
 Murphy, supra,
 
 decided September 24, 1943. In brief it holds that, under the Unemployment Compensation Act, to constitute “employment” it is necessary that there be services performed for wages or under a contract of “hire”; that “hire” means to engage or purchase the labor or services for compensation or wages; and that miners and drillers employed by a silica processor to supply such processor’s mill with crude silica obtained from land controlled by the processor, under which contract of employment payment to the miners was to be based upon results actually completed, the company to have the right to reject crude silica not of acceptable quality and contracts to be cancelable by either party after prescribed notice, and the company to have the right to make contracts with other miners to perform similar work and operations, were “independent contractors” and not “employees”
 
 (Vane
 
 v.
 
 Newcombe & Smith,
 
 132 U. S., 220, 33 L. Ed., 310, 10 S. Ct., 60); and that as to such miners and drillers the processor was not an “employing unit” within the Unemployment Compensation Act and was not liable for unemployment compensation contributions. As bearing upon the relationship necessary to bring the employer under the coverage of the act, the court said: “The primary question is whether these
 
 *
 
 * * miners were employees or independent contractors. If they were not employees [as distinguished from independent contractors] under the Unemployment Compensation Act, the judgment should be affirmed. If it be determined they were employees, then it will be necessary to determine whether, as such, they were exempted under sub-paragraphs A, B, and C of Section 2 (f) (5) of the act [the three-tests paragraph of the act].”
 

 
 *140
 
 Due to the infinite variety of circumstances which arise and which must he considered in unemployment compensation cases, it is impossible to harmonize the .various holdings of the courts on this subject. But the cases cited as being
 
 contra
 
 to the position adopted by the court in this case, and holding that there is unemployment compensation coverage, are based upon a finding of fact that a relationship equivalent to that of master and servant existed. So far as we are able to discover, no court has held that there is or should ■ be coverage where the relationship involved is that of principal and independent contractor.
 

 The judgment of the Court of Appeals is reversed and that of the Common Pleas Court affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Bell and Williams, JJ., -concur.
 

 Zimmerman and Turner, JJ., dissent.