### 40620. NATIONAL TRAILER CONVOY, INC. v. UNDERCOFLER, Commissioner.

Decided April 16, 1964—Rehearing denied May 12, 1964.

*Alston, Miller & Gaines, William B. Spann, Jr., John R. Crenshaw*, for plaintiff in error.

*Otis L. Hathcock*, contra.

JORDAN, Judge. ■ The general allegations of the affidavit of illegality that the individuals claimed by the Commissioner of Labor to be in the employment of the defendant company were independent contractors and not employees of the company and were not paid wages for personal services within the scope of the Employment Security Law were allegations of ultimate fact and were sufficient to set forth an issuable defense to the fi. fa., execution and levy as against general demurrer unless, as contended by the Commissioner, the specific facts alleged in said affidavit showed as a matter of law that said individuals were in the employment of the company within the purview of the Employment Security Law and subject to the coverage afforded by the Act.

The term "employment" is defined in the Act as follows: " 'Employment' means any service performed prior to December 31, 1940, which was employment as defined in this section prior to such date, and, subject to the other provisions of this subsection, service performed after December 31, 1940, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied." *Code Ann.* § 54-657 (h 1).

" 'Wages' mean all remunerations for personal services, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash." *Code Ann.* § 54-657 (h 7 O n). A contract of hire is defined in *Code* § 12-201 as follows: "Hiring is a contract by which one person grants to another either the enjoyment of a thing, or the use of the labor and industry of himself, during à certain time, for a stipulated compensation, or where one contracts for the labor or services of another about a thing bailed to him for a specified purpose"; and under this definition, services "performed for wages or under any contract of hire," are as a matter of law, one and the same.

"Services performed by an individual for wages shall be deemed to be employment subject to this Chapter, unless and until it is shown to the satisfaction of the Commissioner that:

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business." *Code Ann.* § 54-657 (h 6).

In determining whether an individual comes within the scope of the Employment Security Law under the above provisions, it is first necessary to establish that the individual in question performs services for wages, or the equivalent of the same, and this major premise must be established before the exceptions enumerated in *Code Ann.* § 54-657 (h 6) of the law become material. *Huiet v. Great A. & P. Tea Co.*, 66 Ga. App. 602, 607 (18 SE2d 693). It is not the purpose of the "A, B, C" tests to widen the scope of the term "employment" as used in the statute so as to include therein persons not otherwise included, but their function is to exclude from the definition of the term "employment" persons who might, except for the application of these tests, be included therein. "These tests serve to exclude persons who perform incidental service and who, but for such limitations, might be classed as employees of the person for whom such incidental service is rendered." Commercial Motor Freight v. Ebright, 143 Ohio St. 127, 136 (54 NE2d 297).

The exceptions contained in *Code Ann.* § 54-657 (h 6) can have no application, therefore, except in cases where the three precedent conditions are first found to exist, namely: (1) that services were performed; (2) by an individual; (3) for wages. McCain v. Crossett Lumber Co., 206 Ark. 51, 60 (174 SW2d 114). This is true for the reason that the exaction of contributions under the law is made only as to labor or personal services rendered, *Jeffreys-McElrath Mfg. Co. v. Huiet*, 196 Ga. 710, 720 (27 SE2d 385, 150 ALR 1200), the wages paid for such services being the basis of the required contributions, *Code Ann.* § 54-621, as well as the basis for unemployment benefits, *Code Ann.* § 54-604.

■ The relationship between the defendant company and the individuals claimed by the Commissioner to be the employees of the company was, according to the allegations of the affidavit of illegality, created and controlled by the contracts of lease executed by the parties; and under the facts alleged, including the terms of said agreements, the status of these individuals, when viewed in the light of common law principles, was clearly that of independent contractor and not that of employee. These individuals owned their own tractors, hired their own drivers and assistants, paid the wages of their employees and the other expenses of operating and maintaining their vehicles; and were free to contract with anyone for their services as truckers or to hold an independent certificate as a public carrier from the Public Service Commission. Having entered into the contracts of lease with the defendant company, they were under the allegations of the affidavit still free to reject hauls tendered to them without penalty other than being displaced in order of rotation with other truckers, and to haul for others; and having accepted a haul, they were not subject to specific control by the company as to the time and manner in which they performed their services, the company having only the right of general supervision of traffic and transportation, such as designation of points of origin and destination of hauls and enforcement of the rules and regulations of the Interstate Commerce Commission.

Under these alleged circumstances, we think it clear that these individuals were independent businessmen and that the income ultimately derived by them from the consideration provided for under the lease agreements constituted profit from the conduct of their own business and not wages or remuneration for personal services within the purview of the Employment Security Law. The degree of participation in the lease and the payments received under the lease depended upon the voluntary individual efforts of the tractor owners. Suppose a lessor-owner made only one trip per month or even one trip per year, would he be an employee for the entire period? Would he be unemployed during the periods he was not engaged in hauling under the lease? What would be his benefits and how could they be determined? The difficulty in answering such questions under the conditions here

existing negatives the normal relationship of employer and employee.

It is our opinion, therefore, that, as held by the Supreme Court of Arkansas in McCain v. Crossett Lumber Co., 206 Ark. 51, 61, supra: "One whose income is determined by the profit or loss which he derives from his individual business cannot be said to be rendering 'services for wages,' even though he is contributing his personal services to the enterprise."

■ Accordingly, we hold that under the allegations of the affidavit of illegality, these individuals were not employees of the defendant company but were independent contractors and that they were not performing services for wages so as to bring them within the scope of the Employment Security Law. McCain v. Crossett Lumber Co., 206 Ark. 51, supra; Commercial Motor Freight v. Ebright, 143 Ohio St. 127, supra; United States v. Silk, 331 U.S. 704 (67 SC 1463, 91 LE 1757); State Emp. Security Comm. v. Hennis Freight Lines, 248 N.C. 496 (103 SE2d 829); Florida Industrial Comm. v. Orange State Oil Co., 155 Fla. 772 (21 S2d 599); Pazan v. Michigan Unemployment Compensation Comm., 343 Mich. 587 (73 NW2d 327); State Employment Security Board v. Motor Exp., Inc., 117 Ind. App. 113 (69 NE2d 603).

The case of *Redwine v. Refrigerated Transport Co.*, 90 Ga. App. 784 (84 SE2d 478), which is relied upon by the Commissioner for the proposition that the consideration received by the individuals in this case under the lease agreements constituted in part wages for personal services rendered so as to bring them within the purview of the Employment Security Law, is not controlling here. The owner-drivers of tractors and trailers involved in that case were under the terms of the contracts executed by them with the transportation company required to haul exclusively for the company; they could not reject a haul tendered to them by the company; they were required to operate their vehicles personally except for the use of a relief driver; they were required to comply with all company rules which did not conflict with the terms of the written agreements; and their vehicles were to be within the "dominion, supervision, and control" of the company during the term of the agreement.

Under these circumstances, the relationship of these individuals with the company, as determined by the dominion, supervision and right of control possessed by the company over them, even when viewed in the light of common law principles, was that of employer and employee; and presumptively the remuneration received by such employees for their personal services constituted wages within the scope of the Employment Security Law. The decision of the court in the *Refrigerated Transport* case was primarily concerned with the issue of whether or not the owner-drivers were excluded from the coverage afforded by the Act under the provisions of *Code Ann.* § 54-657 (h 6), which issue is not reached here.

The affidavit of illegality stated an issuable defense to the fi. fa., execution and levy and the trial court erred in sustaining the general demurrer thereto.

*Judgment reversed. Bell, P. J., and Eberhardt, J., concur.*