356    SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

MOORE-MANSFIELD CONSTRUCTION COMPANY v. THE
INDIANAPOLIS, NEWCASTLE AND TOLEDO
RAILWAY COMPANY ET AL.

[No. 21,823.    Filed March 27, 1913.]

1. PLEADING.—*Demurrer.*—*Joint Demurrer.*—A joint demurrer to
a complaint is properly overruled unless the demurrer is well
taken as to all who join in such demurrer.    p. 361.

2. MECHANICS' LIENS.—*Enforcement.*—*Commencement of Suit.*—
Although in ordinary cases an action is not commenced until a
complaint shall have been filed and a summons issued and placed
in the proper officer's hands for service, under §8299 Burns 1908,
Acts 1889 p. 257, providing that mechanics' liens may be en-
forced by filing a complaint within one year from the time the
notice was received for record, it is only necessary that the
complaint shall be filed within one year.    p. 361.

3. ABATEMENT.—*Another Action Pending.*—Notwithstanding the
general rule that, to abate an action on the ground of another
action pending, the plaintiff must be the same in each action,
where the court, following its appointment of a receiver for a
railroad company, authorized a construction company to file a
suit to foreclose an alleged lien against the railroad company,
and pending such suit a suit was filed by mortgage trustees, who
were parties to the first suit, to foreclose their mortgage, the
pendency of the first suit was ground for abating the second
even though certain lien claimants were made parties who were
not named as parties to the first suit, since the proceedings were
*in rem*, and all the relief obtainable in the second action could be
had in the first and any parties necessary to complete the relief
to be had in the first action could be brought in by cross-
complaint.    p. 363.

4. STATUTES.—*Construction.*—*Legislative Intent.*—In construing a
statute, the legislative intent, once ascertained, must be given
effect if it is not violative of the Constitution.    p. 367.

5. STATUTES.—*Subjects and Title.*—*Constitutional Provisions.*—
The purpose of the requirement of Art. 4, §19, of the Constitution,
that the subject of every act shall be embraced in its title, was
to prevent "log rolling" legislation, to prevent surprise or fraud
by means of provisions in bills of which the title gives no intima-
tion, and to apprise the people of the subject of legislation under
consideration.    p. 367.

6. STATUTES.—*Subjects and Title.*—*Constitutional Provisions.*—
*Construction.*—The provision of Art. 4, §19, of the Constitution,

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

requiring the subject of an act to be expressed in its title, is generally liberally construed rather than to embarass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it was adopted. p. 367.

7. STATUTES.—*Subjects and Title.—Constitutional Provisions.*— Art. 4, §19, of the Constitution requiring the subject of an act to be expressed in its title, aims only at titles narrower than the enactment, and the unnecessary breadth of a title is ordinarily no objection thereto. p. 368.

8. STATUTES.—*Construction.—Meaning of Words.*—Words found in a statute will be given their ordinary meaning unless there exists some special reason for holding otherwise. p. 368.

9. STATUTES.—*Subjects and Title.—"Laborers."—Mechanics' Liens.* —The word "laborers" as found in our mechanics' lien law previous to March, 1883, was commonly understood by the people, legislators and courts of the State to include in its definition contractors and subcontractors, as well as common manual laborers, so that the title to the act of March 6, 1883 (Acts 1883 p. 140), concerning liens of mechanics, laborers, and material men, is sufficiently broad to cover the provisions of §12 of the act, expressly giving to contractors and subcontractors a lien, and is not in conflict with Art. 4, §19, of the Constitution, requiring the subjects of acts to be expressed in the title. *(Indianapolis, etc., Traction Co. v. Brennan* (1910), 174 Ind. 1, and cases following that case, overruled.) pp. 368, 390.

10. CONSTITUTIONAL LAW.—*Constitutional Provisions.—Construction.*—The practical construction of a constitutional provision, especially where extending over a considerable period of time, is an important factor in ascertaining the limits of legislative authority by constitutional requirements. p. 389.

11. STATUTES.—*Construction.—Reënactment.*—Where a statute is specifically construed by a court of last resort, and afterwards is substantially reënacted, the legislature will be deemed to have adopted such construction in the new enactment. p. 389.

12. STATUTES.—*Subjects and Title.—Constitutional Provisions.*— The provision of Art. 4, §19, of the Constitution, that the subject of every act shall be expressed in its title, does not require that the title of an act shall contain an index to the several provisions or an abstract thereof, since the purpose of a title is to apprise the legislators as to what the subject of legislation is, so as to put them on inquiry, and the details of the act are to be found in the body of the act. p. 390.

13. STATUTES.—*Subjects and Titles.—Words of More than One Meaning.*—When a word of more than one generally understood meaning is found in the title of a bill, the legislator is thereby

put on inquiry into the body of the bill to ascertain what meaning is intended in the act.   p. 390.

14.  COURTS.—*Rules of Decision.—Overruling Precedents.*—When a court has once deliberately adopted and declared a rule, it should not be disturbed by the same court, except for very urgent reasons and upon a clear manifestation of error.  p. 391.

15.  COURTS.—*Rules of Decision.—Overruling Precedents.—Construction of Mechanics' Lien Act.*—The facts that the mechanics' lien laws have been practically interpreted by the people, legislatures and courts for at least seventy years as furnishing a lien for contractors and subcontractors, and were relied upon by appellants as protecting them as contractors in railroad construction, that immediately following the decision of the Supreme Court in *Indianapolis, etc., Traction Co.* v. *Brennan* (1910), 174 Ind. 1, the legislature restored the law to its former supposed efficacy, and that an adherence to the doctrine of such former decision would impose a rule of construction so strict as to seriously embarrass future legislation, present sufficient reasons for overruling such decision, and the cases following it, in so far as they hold that the act of March 6, 1883, concerning liens of mechanics, laborers, and material men, as amended, does not include contractors, subcontractors and corporations among those entitled to liens thereunder, and they are overruled.  p. 391.

From Superior Court of Marion County (77,434) ; *Charles J. Orbison,* Judge.

Action by the Moore-Mansfield Construction Company against The Indianapolis, Newcastle and Toledo Railway Company and others.   From an adverse judgment, the plaintiff appeals.  *Reversed.*

*Wm. A. Ketcham, H. S. Landers* and *Ralph M. Ketcham,* for appellant.

*Baker & Daniels, Addison C. Harris, Henry Hammer* and *Whitcomb, Dowden & Stout,* for appellees.

MORRIS, J.—Cause No. 21,854 in this court, entitled *Moore-Mansfield Construction Co.* v. *George A. Buskirk et al.,* was heretofore ordered consolidated with cause No. 21,823, entitled as above.  The principal questions for determination are the same in each case.

The pleadings show that appellee, Indianapolis, Newcastle and Toledo Railway Company, was incorporated un-

der the Indiana laws in 1905, and, at the same time, appellee Newcastle-Indianapolis Construction Company was organized under the laws of this State. The same persons constituted the officers, directors and stockholders in each corporation. Shortly thereafter, a contract was executed by the two companies for the building and construction, by the construction company, of a new electric railway line from Indianapolis to Newcastle, Indiana. Afterward, appellee construction company, with the consent and procurement of the railroad company, and its incorporators, entered into a contract in writing with the Electrical Installation Company, for performing certain work, and furnishing certain materials, in the construction of the railroad.

Afterwards, on November 21, 1906, the installation company, with the knowledge and consent, and upon the procurement, and for the benefit of the railway company, the construction company, and the incorporators thereof, entered into a written contract with appellant, Moore-Mansfield Construction Company (hereafter termed the Moore Company), for the performance, by the latter, of the labor, and the furnishing of materials, for the construction of the bridges of the new railway line. The Moore Company immediately entered on the performance of the work, pursuant to the contract, and finished the same on November 28, 1907. On November 29, 1907, it filed, in the proper offices, notices of its intention to hold a mechanic's lien on the railway property.

On November 5, 1907, on the complaint of said installation company, appellee, Union Trust Company, was appointed receiver of the property and assets of the railway company, by the Superior Court of Marion County, and, since that time, has been in possession of said property, as receiver, and managing the trust, under the order of the Superior Court, Room 3.

On July 14, 1908, appellant, Moore Company, filed its petition in Superior Court, Room 3, for leave to bring suit

against said receiver, and others, to enforce its alleged mechanic's lien. The petition was granted, and thereafter, pursuant to leave granted, on November 28, 1908, the Moore Company filed its complaint in Superior Court, Room 1, to enforce its lien. In this complaint, the receiver, the railway company, the incorporators thereof, the construction company, the installation company, and Frederick L. Eldridge and the Knickerbocker Trust Company, mortgage trustees, were made defendants. While the suit was pending in the superior court, Eldridge and the Knickerbocker Trust Company, resigned as mortgage trustees, and were succeeded as such, by appellees George A. Buskirk and Louis F. Smith, citizens and residents of Indiana. Thereupon Buskirk and Smith were by order of the lower court substituted as defendants for their predecessors, who had resigned.

It is alleged that there is due plaintiff Moore Company, for labor performed and materials furnished, under the contract, the sum of $20,000; that it holds a lien therefor on the railway property; that defendants are asserting liens thereon, but that in fact such liens are junior to that of plaintiffs. There is a prayer for the foreclosure of the lien, and the sale of the railway property, by the sheriff or receiver, to satisfy the same.

Demurrers to the complaint, for insufficient facts, were filed by defendants, and each demurrer was sustained. The plaintiff declined to plead further, and judgment was rendered for the defendants. The errors assigned here are the rulings, on the various demurrers.

The trial court filed a written opinion when it sustained the demurrers, and this opinion is incorporated in the record. It shows that the demurrers were sustained because appellant, Moore Company, was a contractor, and, for that reason, in the opinion of the trial court, not entitled to a lien. While the case was pending, and before the court's ruling, the opinion in the *Indianapolis, etc., Traction Co.* v. *Brennan* (1910), 174 Ind. 1, 87 N. E. 215, 90 N. E.

NOVEMBER TERM, 1912.          361

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

65, 90 N. E. 68, 91 N. E. 503, 30·L. R. A. (N. S.) 85, was handed down, and the trial court based its ruling on the doctrine announced in that case. This question will be considered later in connection with the same proposition urged by appellants, Pulse and Porter.

1. Appellees, Buskirk and Smith, urged the point that while the complaint was filed within the year, appellant, Moore Company, did not commence the action against the mortgage trustees within that time, and consequently no cause of action is stated against them. This contention is met by appellant, Moore Company, with the proposition, (1) that because the only demurrer filed by the mortgage trustees was a joint one, by them and other defendants, no question is presented in favor of the trustees, unless the demurrer is well taken as to all parties joining in the demurrer. We think appellant is correct on this proposition. *Armstrong* v. *Dunn* (1895), 143 Ind. 433, 41 N. E. 540; *Miller* v. *Rapp* (1893), 135 Ind. 614, 34 N. E. 981, 35 N. E. 693. It is not contended that the demurrer is well taken, on this question, in favor of the other defendants, joining in the demurrer.

2. In ordinary cases, an action is not commenced until a complaint shall have been filed, and a summons issued and placed in the proper officer's hands for service. However, in *Carriger* v. *Mackey* (1896), 15 Ind. App. 392, 44 N. E. 266, it was held that if the complaint, in a mechanic's lien case, "shall be filed" in one year from the time of receiving the notice for record in the recorder's office, the same is sufficient. §8299 Burns 1908, Acts 1889 p. 257. We do not feel inclined to overrule *Carriger* v. *Mackey, supra.*

The aforementioned installation company, sublet to the Allis-Chalmers Company, the construction of substations and power houses for the railroad, and, thereafter, the same was sublet by said company to appellants Pulse and Porter (cause No. 21,854) by written contract. Thereafter, with

362    SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. *v.* Indianapolis, etc., R. Co.—179 Ind. 356.

the consent and knowledge of all parties, Pulse and Porter furnished all the labor and materials in the construction of certain substations and other buildings, in Hancock and Marion counties, and filed in the proper offices of said counties, notices of their intention to hold a mechanic's lien on the railway property. These notices were filed in December, 1907, and January, 1908.

Within one year after the filing of the lien notices, actions to foreclose the liens, alleged to amount to many thousands of dollars, were filed in the Superior Court of Marion County, Room 3, and these actions were pending there, on October 22, 1910, when Buskirk and Smith, mortgage trustees filed in the same court a complaint to foreclose a mortgage on the railway property, given to secure the payment of 4,500 bonds of $1,000 each, and dated, July 1, 1905. The complaint alleges that the mortgage indebtedness is a first lien on the railway property, and prays for a decree of foreclosure and sale of the railroad property.

To this complaint, the appellants, Moore Company, Pulse and Porter, and a great number of others, were made defendants. Appellants, Pulse and Porter, filed a cross-complaint against the plaintiffs, mortgage trustees, alleging the before-recited facts relative to their contract, the performance of work, filing of notices of lien, and actions to foreclose. It further alleges that when the mortgage was executed no part of the railroad had been constructed, and the railway company owned nothing but a right of way; that the mortgage bonds were sold for the express purpose of raising money with which to pay for the construction and equipment of the road, which fact was well known to all the bondholders; that said bondholders also knew that when the mortgage was executed it was the intention of the railway company to employ various persons to perform labor and furnish material under contract, for the construction of the road, including substations and other buildings; that cross-complainants are entitled to a lien on the property,

NOVEMBER TERM, 1912. 363

Moore-Mansfield, etc., Co. *v.* Indianapolis, etc., R. Co.—179 Ind. 356.

which is superior to that of the mortgage, and they ask judgment for $15,000 and the foreclosure of their liens. The lien notices were filed with the cross-complaint, and made a part thereof. A demurrer for want of facts, was filed by plaintiffs to this cross-complaint, and was sustained. This ruling is assigned as error. As it presents the question of the right of a subcontractor to acquire a mechanic's lien, this ruling will be later considered.

To the complaint of Buskirk and Smith, mortgage trustees (filed Oct. 1910), the Moore Company filed (Feb. 1, 1911), its plea in abatement, of a prior action pending between the same parties. This plea avers the facts heretofore noted relating to the Moore Company suit against the mortgage trustees, *et al.,* filed in November, 1908, in Superior Court of Marion County, Room 1. This plea is very long, and it is unnecessary to set out its details. It alleges the pendency of the suit by the Moore Company against the mortgage trustees filed in 1908, which, it is alleged is for the same cause of action. The cause of action is set out, in detail. The mortgage trustees filed a demurrer to this plea in abatement, which the court sustained, and this ruling is assigned as error. Under the particular facts alleged in this plea, we think the ruling of the trial court was erroneous. The causes of action in the two cases are clearly identical, and so with respect to the relief obtainable. *Carpenter* v. *Talbot* (1888), 33 Fed. 537; *Pullman* v. *Alley* (1873), 53 N. Y. 637. The principal question here arises from the the fact that the parties are reversed—the Moore Company being plaintiff in the prior action, and defendant in the latter. It is the general rule that the plaintiff in both suits must be the same person. 1 Cyc. 34; *Pierce* v. *Feagans* (1889), 39 Fed. 587; *Monroe* v. *Reid* (1895), 46 Neb. 316, 64 N. W. 983; 1 Ency. Pl. and Pr. 758; 3 Am. and Eng. Ency. Law and Pr. 1217. To this rule, however, there are exceptions. *Donatelli* v. *Casciola* (1906), 215 Pa. St. 21, 64 Atl. 319; *City of Tacoma* v. *Com-*

364    SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

*mercial, etc., Power Co.* (1896), 15 Wash. 515, 46 Pac. 1043; *Troy Fertilizer Co.* v. *Prestwood* (1896), 116 Ala. 119, 22 South. 262; *Ward* v. *Gore* (1868), 37 How. Pr. 119; *De La Vergne Mach. Co.* v. *New York, etc., Brewing Co.* (1908), 110 N. Y. Supp. 24, 125 App. Div. 649. The proceedings here were *in rem*. The property was all in the custody of the receiver appointed by the Superior Court, Room 3. Leave had been granted by that court to the Moore Company to bring suit against the receiver, and others, in division or room 1, of that court. The mortgage trustees, Buskirk and Smith, as well as the receiver, were defendants. To that action, all lienholders were proper parties. Where several actions are brought by mechanic's lien claimants, the same may be ordered consolidated. §8300 Burns 1908, Acts 1883 p. 140. The mortgage trustees could have secured all the relief in the first action, obtainable in the second. The fact that in the second action, certain alleged lien claimants were made defendants that were not, in the prior one, ought not require a different rule. Such parties, by appropriate cross-complaints, might have been made parties to the first action. Complete relief could not be obtained except in an action where all lienholders were parties. It is possible that judges of different divisions (or rooms) of the same court might entertain different views of the law and render judgments in direct conflict. No unnecessary expense or burdens should be imposed on the administration of an insolvent corporation in the hands of a receiver. At the best, creditors are apt to suffer. There is no sufficient reason why the receiver should be required to appear in both these actions, and subject the trust to the increased expense occasioned by two suits, where one sufficed.

By timely plea, the Moore Company sought, in so far as it was concerned, to abate the action, and we think the court erred in sustaining the demurrer to its plea. *Rehman* v. *New Albany, etc., R. Co.* (1893), 8 Ind. App. 200, 35 N. E. 292. In the same case (appeal No. 21,854, in this court)

NOVEMBER TERM, 1912.        365

Moore-Mansfield, etc., Co. *v.* Indianapolis, etc., R. Co.—179 Ind. 356.

the Moore Company filed a plea in bar, to the cause of action alleged by the mortgage trustees.   A demurrer was sustained to this plea, and that ruling is here assigned as error.   This plea proceeds on the theory that the mortgage sued on was invalid, because executed as alleged in violation of §1 of the act of March 29, 1879.   §4031 Burns 1908, §2988 R. S. 1881.   Appellees assert this statute is unconstitutional.   In view of the conclusion reached in this opinion, we do not deem it necessary to decide the question presented, and it is not considered.   Appellees Buskirk and Smith filed a motion to dismiss the appeal in cause No. 21,854.   This motion is overruled.

Appellants, Moore Company, and Pulse and Porter, contend that the right existed in favor of contractors and subcontractors, to enforce a mechanic's lien; that the opinion of this court, in *Indianapolis, etc., Traction Co.* v. *Brennan, supra,* and cases following it, holding that contractors, subcontractors and corporations, performing labor and furnishing materials, pursuant to contracts, are not entitled to a lien, are erroneous and should be overruled.   Following the doctrine of the Brennan case are, *Fleming* v. *Greener* (1909), 173 Ind. 260, 87 N. E. 719, 90 N. E. 72, 140 Am. St. 254, 21 Ann. Cas. 959; *Cleveland, etc., R. Co.* v. *DeFrees* (1909), 173 Ind. 717; *Ward* v. *Yarnelle* (1910), 173 Ind. 535, 91 N. E. 7; *Korbly* v. *Loomis* (1909), 172 Ind. 352, 88 N. E. 698, 139 Am. St. 379, 19 Ann. Cas. 904.   It is further contended by appellants, that if the court shall adhere to the doctrine declared in the Brennan case, the same is not binding on appellants, whose causes of action accrued before that decision, by reason of article 1, §10 of the Federal Constitution, which provides that "no State shall  *  *  *  pass any  *  .*  *  law impairing the obligation of contracts".   It is contended that during the period extending from the November, 1843, term of this court, when the case of *McKinney* v. *Springer* (1843), 6 Blackf. 511, was decided, to February 18, 1909, when the opinion in the Brennan case was

handed down, this court, in repeated decisions, held that contractors and subcontractors, equally with day laborers and material merchants, were entitled to liens, under our mechanic's lien laws, and that these settled decisions of a state court, determining the construction of a state constitution or statute, are protected and preserved, equally with state statutes, by the provision of the Federal Constitution against the impairment of the obligations of contracts.

In respect to this proposition, it is asserted by counsel for appellees, among other things, that in no one of the numerous cases decided by this court, wherein liens were enforced in favor of contractors and subcontractors, was the specific question, decided in the Brennan case, ever presented, and consequently the latter case did not declare any rule in conflict with former decisions, within the inhibition of the Federal Constitution. Appellants, Pulse and Porter, make certain claims with reference to their appeal, not involved in that of the Moore Company, but in view of the conclusion we have reached, it is unnecessary to consider such claims. In the Brennan case, *supra*, appellees, Brennan and another, had entered into a contract with the Indianapolis Northern Traction Company to perform labor and furnish materials in the overhead construction of appellant's railroad, and the lower court had decreed a lien in their favor, on the railroad property, under the mechanics' lien act of 1883 (amended in 1889), entitled "An act concerning liens of mechanics, laborers and materialmen." Acts 1883 p. 140; Acts 1889 p. 257, §8295 *et seq.* Burns 1908. In that case, it was contended by appellant (p. 14) that §12 of the act, in so far as it attempts to confer on contractors who do not *personally* (Italics throughout opinion, ours) perform labor, a lien therefor, on railway property, is, under §19, article 4, of the Constitution of Indiana, void, because contractors cannot be embraced within the title of the enactment. Section 12 of the act of 1883, as amended in 1889, in express terms, purports to confer liens on railway property in favor of con-

tractors and subcontractors performing labor and furnishing materials in the construction or repair of railroads.   §8305 Burns 1908, Acts 1889 p. 257.

It was held by this court, in the Brennan case (p. 22) that the term "laborers" used in the title of the act of 1883 cannot be construed to apply to a class of persons known as "contractors," and was not so intended by the legislature; that to construe the term so as to include contractors, would, to that extent, render it violative of Art. 4, §19, of our Constitution.   In support of its ruling that the term "laborer," as used in the title, was intended only to apply to persons personally performing manual labor, the court cites (p. 19) 2 Jones, Liens (2d ed.) §1630, Century Dictionary definition of "laborer," and a number of decisions of courts of this and other states.   On petition for rehearing (p. 49) the additional authority of Phillips, Mechanics' Liens (3d ed.) §157 is cited.   By reason of appellants' contention, we have concluded again to consider the questions decided, and the reasons therefor stated, in the Brennan case.

The legislative intention, once ascertained, must be given effect if not violative of the Constitution.   §19, Art. 4 of our Constitution (1851) contains the following provision:   "Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title."   No like provision is found in our Constitution of 1816.   The purpose of §19, Art. 4, supra, was (1) to prevent "log rolling" legislation; (2) to prevent surprise, or fraud, in the legislature by means of provisions in bills of which the titles give no intimation, and, (3) to apprise the people of the subject of legislation under consideration. Cooley, Const. Lim. (7th ed.) 205; *Bright* v. *McCullough* (1866), 27 Ind. 223.   There has been a general disposition to construe this provision liberally rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for

which it was adopted. Cooley, Const. Lim. (7th ed.) 209, citing a number of Indiana cases. *Clarke* v. *Darr* (1901), 156 Ind. 692, 697, 60 N. E. 688. It should be borne in mind that §19, Art. 4, Constitution, aims only at titles narrower than the enactment. The unnecessary breadth of the title is ordinarily no objection to it. Cooley, Const. Lim. (7th ed.) 206.

Words found in a statute will be given their ordinary meaning, unless there exists some special reason for holding otherwise. The definition of "laborer," as found in the Century Dictionary 3318, is as follows: "One who labors or works with body or mind, or both; specifically, one who is engaged in some toilsome physical occupation; in a more restricted sense, one who performs work which requires little skill or special training, as distinguished from a skilled workman; in the narrowest sense, such an unskilled workman engaged in labor other than that of a domestic servant, particularly in husbandry." It is evident that contractors, building a structure by means of the labor of others employed, would be included in the first definition given above. It is also apparent that skilled laborers would not be embraced in the last definition given. Few words in the English language have a greater variety of definitions than "labor." It may include all effort, physical, intellectual, and even spiritual. 1st Corinthians, 3 chap. 9 v. It is therefore evident that the term "laborer," standing alone, sufficiently defines a contractor as to prevent the deception of legislators, or the public, within the meaning of the constitutional provision. *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 68 N. E. 266. But the term, in the title of the act, is found associated with "liens of mechanics * * * and materialmen." Therefore, since Indiana has had a mechanic's lien act since 1834, which included within its provisions the term "laborer," and its equivalent, "person performing labor," it is evident that the legislators, and public, would

commonly understand by the term "laborers" those included in the existing mechanics' lien statute. It therefore becomes important to know what classes of persons were commonly understood, by the public, legislators and courts of this State, to be comprehended within the term "laborers" as found in our several mechanics' lien laws, previous to 1883. Preliminary to answering this question, it will be instructive to consider the history of mechanics' lien laws, and also certain labor preference statutes, of this, and other states.

The lien of mechanics and materialmen, on buildings and land, is a creature of statute, and was unknown either at common law, or in equity. Phillips, Mechanics' Liens (3d. ed.) §1. Such lien was allowed by the civil law. 1 Domat, Civil Law, by Strahan §§1741, 1724. In France, by the Code Napoleon, masons, architects, *contractors,* and others employed in building houses, etc., were accorded liens. Code Napoleon, Privileges and Mortgages §2, Art. 2103. The origin of such laws, in America, arose from the desire to establish and improve, as readily as possible, the city of Washington. In 1791, at a meeting of the commissioners appointed for such purpose, both Thomas Jefferson and James Madison were present, and a memorial was adopted urging the General Assembly of Maryland to pass an act securing to *master-builders,* a lien, on houses erected, and land occupied. The requested law was enacted December 19, 1791. In his valuable treatise on mechanics' liens, Phillips says in §7: "The next statute on the subject was passed by * * * Pennsylvania in the year 1803. These statutes, while they contained the germ of all subsequent legislation on the subject, are imperfect and meager in comparison with the state of the law at the present time [1893]. The whole subject has been one of gradual growth, extending from imperfect and limited enactments, *embarrassed by adverse decisions,* to be the settled policy of all the States, and of unquestioned importance. The experiment was at first

370    SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

confined to towns and cities, but has, by degrees, as its necessity and justice became apparent, extended itself, in a majority of the States, to the agricultural districts. The lien was designed in its inception, for the most part, *to secure only the principal contractor*, until the frauds perpetrated upon subcontractors and workmen, gave rise to amendments for their proper protection. * * *'' Phillips, Mechanics' Liens (3d ed.) §7.

Under the title, ''Persons Entitled to Lien,'' the same author says, in §35: ''Although it is declared in some adjudications that the mechanics' lien is given to secure an industrious and meritorious class, yet on examination it will be found that the privilege is conferred with reference more to the character of the *work done than to the persons who perform it*. Unless there is some *specific designation of a class as peculiarly entitled to its provisions*, the law will include in its privileges all citizens bestowing their labor or furnishing their materials * * *.'' Phillips, Mechanics' Liens (3d ed.) §35. In the following section, (36) under the same title the author says: ''Fortunately the system is gradually assuming perfection; and all those who are most entitled to the exercise of its beneficial provisions, compatible with the ownership of property and the paramount rights of the public, have been generally included within its principles. Each State has so guarded the remedy as to prevent, in a greater or less degree, the evils that would necessarily attend the indiscriminate multiplications of liens on real estate. *The contractor seems to be universally secured by the lien.* In most of the States, the subcontractor and material-men have either a lien given them directly on the land and building to secure them whatever may be due for their work and materials, or, as in a majority of laws, a right to notify the owner of their unpaid claim for work or materials, with a right of lien against the property for any unpaid balance which at the service of the notice may be in his hands and due to the contractor, or else simply a right of action, without the lien,

against the owner for such unpaid balance. These same provisions are extended in some States to the workman, but generally the *day laborer* or *journeyman* has no such privilege; yet the more recent legislation tends to securing his claim." Phillips, Mechanics' Liens (3d ed.) §36. In §40, the same author says: "The party most generally secured is the contractor." Phillips, Mechanics' Liens (3d ed.) §40.

In *Winder* v. *Caldwell* (1852), 14 How. 434, 14 L. Ed. 487, it was held, under an act of congress entitled to secure to "mechanics and others, payment for labor done and materials found," that the same applied only to those whose personal labor has been incorporated into the building, and not to the contractors who employed them. Similar early decisions were made by Pennsylvania courts, relating to statutes of like phraseology. *Jones* v. *Shawhan* (1842), 4 Watts & S. 257; *Hoatz* v. *Patterson* (1843), 5 Watts & S. 537. Regarding those earlier decisions, Phillips says: "The foregoing decisions have been given to show the construction of the particular phraseology employed. It was found necessary both by Congress, and the legislature of Pennsylvania to amend their legislation. The former did so, by passing an act taking away the lien of the laborer and materialman, and extending it to the contractor; the latter, by including the contractor in the same provisions as the others." Phillips, Mechanics' Liens (3d ed.) §42. Act of Congress, Feb. 2, 1859, 11 Stat. at Large 376; Pa. Act, June 16, 1836.

In *Friedlander* v. *Taintor* (1905), 14 N. D. 393, 104 N. W. 527, 116 Am. St. 697, 9 Ann. Cas. 96, the question involved the right of the architect to assert a mechanic's lien for furnishing plans and superintending the construction of a building, under a statute providing that "any person who shall perform any labor * * * upon any building or other structure upon land * * * under a contract with the owner of such land * * * shall * * * have for his *labor done* * * * a lien upon such building." It was

372    SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. *v.* Indianapolis, etc., R. Co.—179 Ind. 356.

urged that the term "labor" did not include services of an architect. The court in its opinion says: "This question is not a new one to the courts, and it has been held with great unanimity that where the architect not only draws the plans, but superintends the construction, he is entitled to a lien; and this under statutes which merely give a lien in general terms for work and labor furnished in the erection of a building." A number of cases and text-book authorities are cited, including Boisot, and Phillips, on Mechanics' Liens. Continuing the court says: "The Alabama statute uses the same language, and the court, in *Hughes* v. *Torgerson, supra* [96 Ala. 346, 11 South. 209, 38 Am. St. 105, 16 L. R. A. 600], sustained the lien of a supervising architect. 'Are such services by an architect work and labor upon  *  *  * a building or improvement on land, within the meaning of the statute? Code, §3018. It is plain that a *contractor, for the construction of the building* is within the protection of the statute.' "

The mechanics' lien laws of America, in general, reveal the underlying motive of justice and equity in dedicating, primarily, buildings and the land on which they are erected, to the payment of the labor and materials incorporated, and which have given to them an increased value. The purpose is to promote justice and honesty, and to prevent the inequity of an owner enjoying the fruits of the labor and materials ·furnished by others, without recompense. *Stryker* v. *Cassidy* (1879), 76 N. Y. 50, 32 Am. Rep. 262; Phillips, Mechanics' Liens (3d ed.) §§9, 10, 35. The lien is *sui generis,* and bears no analogy to the artizan's lien on a chattel, for the repair thereof. It bears little analogy to the modern statutory liens on the master's property intended to secure the payment of wages of a class of employes of manufacturers and others, commonly designated as laborers and servants. *Anderson, etc., Assn.* v. *Thompson* (1897), 18 Ind. App. 458, 48 N. E. 259; *Stryker* v. *Cassidy, supra; Tod* v. *Kentucky Union R. Co.* (1892), 52 Fed. 241, 3 C. C. A. 60,

18 L. R. A. 305; Phillips, Mechanics' Liens (3d ed.) §§10, 11.

It is evident that among the motives for the enactment of such master and servant statutes, is that of humanity, or charity, for a class of persons poorly equipped for timely discovery of the employers' approaching insolvency, and illy able to endure the loss of wages. Such motive is generally not apparent in the enactment of mechanics' lien laws, although it may have existed in enacting the latter part of §1 of our mechanics' lien law of 1883 as amended in 1889 (Acts 1883 p. 140, §8295 Burns 1908). The cases of *Aikin* v. *Wasson* (1862), 24 N. Y. 482; *Wakefield* v. *Fargo* (1882), 90 N. Y. 213, discussed in the Brennan case, *supra,* (pp. 19, 20) arose under a statute of New York making stockholders of corporations liable for debts that may be due the corporation's "laborers, servants and apprentices." In the first case it was held that a contractor for constructing a portion of a railway, and in the latter, that a bookkeeper and general manager of a manufacturing company, was not included in the term "laborers" as found in the statute.

In the case of *Stryker* v. *Cassidy, supra,* the plaintiff was an architect claiming a lien under the mechanics' lien act of New York (similar to ours) giving a lien in favor of "any person who shall perform any labor, or furnish any materials, in building", etc. It was contended by defendant that the restricted definition of "laborer," as applying only to manual labor, personally performed, given to the term, by the Court of Appeals, in *Aikin* v. *Wasson, supra,* and cases following it, was likewise applicable to persons "performing labor" under the mechanics' lien act. This contention prevailed in the intermediate appellate court. *Stryker* v. *Cassidy* (1877), 10 Hun 18. On appeal to the Court of Appeals, the cause was reversed, and in the opinion, it is said by the latter court: "The act authorizes a lien to be created in favor of 'any person who shall perform any

374          SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

labor, or furnish any materials, in building, altering, or re-
pairing any house, etc., by virtue of any contract with the
owner,' etc.   This language is general and comprehensive,
and its natural and plain import includes all persons, who
perform labor, in the construction or reparation of a build-
ing, irrespective of the grade of their employment, or the
particular kind of service.   The architect who superintends
the construction of a building performs labor as truly as
the carpenter who frames it, or the mason who lays the
walls, and labor of a most important character.   It is not
any the less labor within the general meaning of the word,
that it is done by a person who is fitted by special training
and skill for its performance.   The language quoted makes
no distinction between skilled and unskilled labor, or be-
tween mere manual labor and the labor of one who super-
vises, directs, and applies the labor of others.   *   *   *   Un-
der the act in question a lien may be created not only in
favor of workmen employed by a contractor, but in favor
of the *contractor* also.   *   *   *   The right to acquire a
lien is not confined to persons *who may be supposed to need
the special protection of the state.*   The general principle
upon which the lien laws proceed, is that any person who
has contributed by his labor, or by furnishing materials to
a structure erected by an owner upon his premises, shall
have a claim upon the property for his compensation.
*   *   *   The cases of *Aikin* v. *Wasson* [1862], 24 N. Y. 482,
and *Coffin* v. *Reynolds* [1868], 37 *id.* [N. Y.] 640, arose
under statutes, making stockholders of corporations liable
for debts owing by the corporations to 'laborers or servants,'
and the court, proceeding upon the ground that the stat-
utes then under consideration were intended for the *pro-
tection of persons belonging to the* class commonly known
as laborers or servants, and performing manual labor
merely, held in the one case that a contractor for building a
portion of a railway, and in the other that a secretary of a
corporation to whom the corporation was indebted for serv-

ices in that capacity, were not laborers or servants within the acts in question.'' The distinction between the meaning of ''laborer'' as found in the mechanics' lien acts, and in the master and servant labor acts, is clearly pointed out in *Anderson, etc., Assn.* v. *Thompson, supra.*

The appellees in that case were contractors, and, in 1892, under a contract with appellant, erected some buildings on appellant's land, for which they were not paid. The value of the labor of appellees' employes in the erection of the buildings, aggregated more than $2,000. No notice of mechanic's lien was ever filed. Three years after the buildings were completed the appellant became insolvent, and appellees filed suit to subject the real estate to a lien in their favor for the value of the labor of the employes furnished in the erection of the buildings thereon, under the provisions of the act of 1885. Acts 1885 p. 36. The first section of this statute requires corporations to pay their employes ''engaged in manual or mechanical labor'' at least once per month. Section 3 provides that all debts due any person for manual and mechanical labor shall be preferred claims where the property of the corporation passes into the hands of an assignee or receiver. The lower court allowed the lien. The judgment was reversed in the Appellate Court, which, in its opinion, used the following language: ''Statutes must have a rational interpretation, to be collected not only from the words used, but from the policy which may be reasonably supposed to have dictated the enactment, and the interpretation should be rigorous or liberal, depending upon the interests with which it deals. * * * Appellees neglected to take advantage of a statute enacted for the *protection of contractors, to which class they must certainly belong.* * * * The items going to make up exhibit B * * * are for labor done and performed by servants and employes of appellees, not of appellants * * *. This claim arises out of work done in completing a contract * * * without filing any notice as is provided by section

7257 Burns' R. S. 1894 [Mechanic's Lien Act] and, after waiting three years, appellees institute this action to enforce their claim as a prior lien against the property of said association  *  *  *. We are clearly of the opinion that the complaint herein states no cause of action.'' *Anderson, etc., Assn.* v. *Thompson, supra,* 463. The distinction between labor acts and mechanics' lien laws, similar to ours, is likewise pointed out in *Tod* v. *Kentucky Union R. Co., supra.*

In the case of *Raynes* v. *Kokomo Ladder, etc., Co.* (1899), 153 Ind. 315, 54 N. E. 1061, a general manager of an insolvent manufacturing company asserted a lien on its property for his services, and relied on the labor act of 1885, heretofore noted (Acts 1885 p. 36, §7058 Burns 1894) and that portion of §7255 Burns 1894, which reads as follows: ''and, all claims for wages for mechanics and laborers employed in or about any shop,  *  *  *  or manufactory, shall be a first lien upon all the machinery, tools, stock of material or work finished or unfinished, located in or about such shop,  *  *  *  or manufactory, or used in the business thereof; and should the person, firm or corporation be in failing circumstances, the above mentioned claims shall be preferred debts, *whether notice of lien be filed or not.''* The language above quoted did not appear in the mechanics' lien act of 1883, *supra,* but was added by the amendment of 1889. Acts 1889 p. 257. It is evident that this amendment of 1889 was intended to apply the substantial provisions of the labor act of 1885, to such factory and mercantile establishments as might be subjected to mechanics' liens under the general provisions of the act, and therefore the amendment should be construed in like manner with the act of 1885. §7058 Burns 1894, Acts 1885 p. 36. It was held in that case that a general manager of a corporation was not a ''laborer'' within the meaning of the act of 1885, or the amendment of 1889. Similar acts, relating to master and servant, are found, in recent years, in most of the

states. They have great similarity. With practical unanimity the courts of the various states have ascribed to the word "labor", when found therein, a restricted meaning, applicable to services rendered personally, in performing manual labor. 26 Cyc. 1067, et seq.

The reasons for such decisions are apparent. The motive for such enactments, is the protection of certain classes of persons frequently unable to properly protect themselves. The very language of most of the statutes shows they are only intended to apply to restricted classes of employes, and not to all of them. The protection is extended alike to the furnace man shoveling coal, and to the carpenter repairing or constructing buildings. The lien applies as well to the personal property of the master, as to the real. Generally, no notice is required to be filed relating to a laborer's intention to assert a lien. In view of the above, many other distinctions between laborers' statutory liens and mechanics' liens might be suggested. The analogy between the two classes of statutes is so remote as to make it apparent that a definition of the word "labor", under either, furnishes but limited assistance in defining the word, when found in the other. The cases of *Raynes* v. *Kokomo Ladder, etc., Co., supra; Anderson, etc., Assn.* v. *Thompson, supra; Heebner* v. *Chave* (1847), 5 Pa. St. 115; *Seider's Appeal* (1863), 46 Pa. St. 57; *Wentroth's Appeal* (1876), 82 Pa. St. 469; *Pennsylvania, etc., R. Co.* v. *Leuffer* (1877), 84 Pa. St. 168, 24 Am. Rep. 189; *Adams* v. *Goodrich* (1875), 55 Ga. 233; *Tod* v. *Kentucky Union R. Co., supra; Henderson* v. *Nott* (1893), 36 Neb. 154, 54 N. W. 87, 38 Am. St. 720; *Aikin* v. *Wasson, supra; Wakefield* v. *Fargo, supra; Lang* v. *Simmons* (1885), 64 Wis. 525, 25 N. W. 650, and *Vane* v. *Newcombe* (1889), 132 U. S. 220, 10 Sup. Ct. 60, 33 L. Ed. 310, cited in the Brennan case (p. 19), involve the definition of laborers as found in labor-employe, or similar statutes, and not such definition under mechanics' lien laws. In the case of *Vane* v. *Newcombe, supra,* appellant had strung large quantities

378 · SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

of wire on telegraph poles through Indiana under a contract with a telegraph company. He claimed a lien under the act of our General Assembly, of May 13, 1877, which gave the employes of corporations a lien on the corporate property for "work and labor done" for it. §§5286, 5287 R. S. 1881.

It was also contended that appellant was entitled to a lien under our mechanics' lien law of 1883. It was held by the court, Mr. Justice Blatchford delivering the opinion, that appellant was not an employe or laborer of the corporation within the meaning of the act of 1877, but was a contractor, and that he was not entitled to a lien under the mechanics' lien act of 1883, because he had failed to file the required notice. In the course of the opinion it is said: "This mechanics' lien statute [1883] gives a lien upon a building to all persons who perform labor or furnish materials for the construction or repair of the building, even though *they do it under a contract*, and is not confined to employes of the owner of the building; and it also gives a lien on a manufactory to persons who may have furnished machinery or materials for the manufactory, even though they may have done so under contract with the owner of the manufactory or *under contract with the contractor with such owner*. * * * In view of these provisions of other lien statutes of Indiana the limited language of §5286 [Acts 1877 p. 27] is very marked, and justifies the interpretation that the provisions of the section are to be confined *to a special class* of persons."

The case of *Rogers* v. *Dexter, etc., R. Co.* (1893), 85 Me. 372, 27 Atl. 257, 21 L. R. A. 528, cited in the Brennan case (p. 18) involved an action by a subcontractor against a railroad company, for services of laborers employed by the subcontractor in the construction of a railroad, under a statute which required railroad companies to require sufficient security from contractors for the payment of all labor performed in construction, by persons in their employment.

The statute further makes the companies liable "to the laborers employed" for labor actually performed. It is evident that this statute did not contemplate a preference in favor of contractors, or subcontractors, and further that its benefits were only intended in favor of a restricted class, and that the word "laborers", used in the statute, was intended to be taken in a restricted sense.

The case of *Mann* v. *Burt* (1886), 35 Kan. 10, 10 Pac. 95, cited in the Brennan case (p. 19) was an action under a statute similar to the Maine law (*Rogers* v. *Dexter, etc., R. Co., supra*). Chapter 136, Laws of Kansas, 1872. The cases of *Chicago, etc., R. Co.* v. *Sturgis* (1880), 44 Mich. 538, 7 N. W. 213, and *Martin* v. *Michigan, etc., R. Co.* (1886), 62 Mich. 458, 29 N. W. 40, involve the construction of a labor statute similar to the Maine and Kansas acts above noted. Michigan Acts 1871 p. 163.

In Michigan, contractors are awarded liens for constructing buildings. Under a statute giving a lien to "persons who perform any labor or services in manufacturing lumber", the Supreme Court of Michigan held the owner of a sawmill, manufacturing lumber, entitled to a lien on lumber manufactured. *Phillips* v. *Freyer* (1890), 80 Mich. 254, 45 N. W. 81. See, also, *Black's Appeal* (1890), 83 Mich. 513, 47 N. W. 342.

It is evident that the definition of the word "laborer" found in the Maine, Kansas and Michigan railroad labor acts, can throw but little light on the determination of the meaning of "laborer" as found in the title of our mechanics' lien law of 1883.

In 2 Jones, Liens (2d ed.) §1630, appears the following statement, cited in the Brennan case: "The right conferred by a lien in favor of laborers is personal, and cannot be availed of by one who furnishes labor." A consideration of the context shows that the author was not considering the definition of "laborers" generally, or as found in mechanics' lien laws, but as found in "Special Liens Applicable to

380        SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. *v.* Indianapolis, etc., R. Co.—179 Ind. 356.

Railroads'' which is the title under which §1630, *supra,* is found. See 2 Jones, Liens (2d ed.) §1628. These special laws have been heretofore considered in this opinion.

*Dano* v. *M., etc., R. Co.* (1872), 27 Ark. 564, was a case under an act giving laborers liens on movable property and also on real estate. The ground of the decision is somewhat obscure, but it may be deemed as holding that the word ''laborer'' as found in the statute should be given a restricted meaning.

In *Little Rock, etc., R. Co.* v. *Spencer* (1898), 65 Ark. 183, 47 S. W. 196, 42 L. R. A. 334, under a statute according a lien to ''Every mechanic, builder, artisan, workman, laborer, or other person, who shall do or perform any work or labor upon  *  *  *  any railroad,'' it was held, in the majority opinion of the court, that a contractor was not embraced within the definition of laborer, or other person, who performs work, but on the contrary only persons personally performing manual labor were intended as beneficiaries. A vigorous dissenting opinion, containing an elaborate collection of authorities, was filed by Wood, J. At the next session of the legislature (1899) the act was so amended as to conform to the construction of the former act as set out in the dissenting opinion. Arkansas Acts 1899 p. 145. *Frick Co.* v. *Norfolk, etc., R. Co.* (1898), 86 Fed. 725, 32 C. C. A. 31, also cited in the Brennan case, gives a restricted definition to the word laborer. The reasoning, however, is based on *Vane* v. *Newcombe, supra,* and *Louisville, etc., R. Co.* v. *Wilson* (1891), 138 U. S. 501, 11 Sup. Ct. 405, 34 L. Ed. 1023, which held that attorney's fees were not embraced within the meaning of ''wage of employes''.

The opinion in the Brennan case also quotes (p. 49) a portion of §157, Phillips, Mechanics' Liens (3d ed.). The matter quoted is erroneously stated to be the author's view. It is, however, merely a quotation of a portion of the opinion of the court in *Hale* v. *Brown* (1880), 59 N. H. 551, 47 Am. Rep. 224. The distinguished author's own views of the con-

NOVEMBER TERM, 1912.     381

Moore-Mansfield, etc., Co. *v.* Indianapolis, etc., R. Co.—179 Ind. 356.

tractor's status, under mechanics' lien laws, has already been quoted in this opinion. A perusal of the entire opinion, in *Hale* v. *Brown, supra* (a portion of which is set out in §157, *supra*), shows that the court was there considering the question of a lien under a lumberman's statute which conferred a lien only for *personal services*. It would not appear that any reasonable dissent could be urged against the conclusion of the New Hampshire Court, under the particular wording of that statute. In 27 Cyc. 83, it is said: "Under the more modern statutes, the contractor is usually entitled to a lien." In Boisot, Mechanics' Liens §218, the author says: "But at the present day statutes generally allow a lien to contractors, either by express terms, *or by necessary implication.*"

The test of the whole matter involved here, however, is, what persons were reasonably intended by the legislators to be included within the phrase "Liens of mechanics, laborers and materialmen." We have had mechanics' lien laws since 1834. All of these have given a lien to persons "performing labor on buildings." What meaning had usually been given the term "laborer," or its equivalent, "persons performing labor," by the people, legislatures and courts of Indiana, previous to 1883? If that question can be satisfactorily answered, the problem is solved, for no one will contend that the plain intent of a legislative enactment will be overthrown by a definition of a lexicographer, however eminent. But even that is not here involved, for the word in controversy has definitions to fit either theory, and, consequently, the meaning commonly accorded the word by the people of the state and the different departments of its government, becomes all important. Section 1 of the first act on the subject (1834), defined the persons entitled to a lien as follows: "Sec. 1. Be it enacted by the General Assembly of the State of Indiana, That carpenters, joiners, brick and stone masons, plasterers, turners, painters, brickmakers, lumber merchants, and all others performing labor or furnishing materials for the construction or repair of any

382          SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

building *within any town regularly laid out and recorded in this State, or within one half mile of the limits thereof,* shall and may have a lien separately or jointly upon the building or buildings they may have constructed or repaired, or for which they may have furnished materials of any description, to the extent of the value of the labor done or materials furnished; or for both, where the amount due shall exceed thirty dollars." Acts 1834 p. 165.

In 1838, the same section was reënacted, except that the portion thereof which we have italicized, was omitted. R. S. 1838 p. 412. By this amendment, the law was made applicable to all the State, instead of towns. Section 1 of the act, as found in the R. S. 1843, is a copy of the same section in the R. S. 1838. R. S. 1843 p. 776. Section 2 of the act, as found in the R. S. 1843 p. 776, reads as follows: "The provisions of this article shall only extend to work done or materials furnished on new buildings, *or to a contract entered into with the owner of any building, for repairs,* and not to any contract made with the tenant." Section 3 provides a method for fixing a personal liability on the owner in favor of subcontractors, journeymen and laborers. Section 4 is as follows: "When any laborer, journeyman, or *subcontractor, shall acquire any such lien,* the same may be set off by the owner of the building  *  *  *  in any action brought against him by the person who otherwise is entitled to recover the same under the contract." It thus appears, that by §4, the legislature, by necessary implication, defined the term "all others performing labor or furnishing materials" as including subcontractors.

The act of 1843 continued in effect until 1852. It will be noted that previous to 1852, no lien was given unless the value of the labor or material equalled $30. In those days the wages of common laborers, who performed manual labor, were very low. If the object of the legislation was solely to protect the manual laborer, and not the contractor, the General Assembly of 1834, and its successors up to 1852 must

NOVEMBER TERM, 1912.     383

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

be condemned for palpable deception, because in the majority of instances the manual laborer would not have earned as much as $30 on a single job, and the security of the lien accorded would generally have been a delusion.   If however the statute be considered as indirectly securing the laborer by giving the contractor a lien for all the labor performed and materials furnished; and if it be further considered that at that time attorneys' fees were not allowed lien claimants against the owners, the act would. appear reasonable.   Section 1 of the act as it appears in the R. S. 1843, was amended in 1852 so as to somewhat enlarge its scope; and, instead of naming various classes of skilled workmen, they are grouped under the term "mechanics."   It will be noted that the term "performing labor or furnishing materials for the construction or repair of any building" continued, without alteration, from 1834.   The section as amended in 1852 reads as follows:  "Mechanics, and all persons performing labor or furnishing materials for the construction or repair of any building, or who may have furnished any engine or other machinery for any mill, distillery, or other manufactory, may have a lien separately or jointly upon the building which they may have constructed or repaired, or upon any buildings, mill, distillery, or other manufactory for which they may have furnished materials of any description, and on the interest of the owner in the lot or land on which it stands, to the extent of the value of any labor done or materials furnished, or for both.   2 R. S. 1852 p. 181, §5293 R. S. 1881.

Section 1 of the act of 1852 continued in effect until the act of 1883.   This proposition is controverted by counsel for appellees who assert that the act of 1852 was repealed by §867 of the act of 1881, entitled "An act concerning proceedings in civil cases."   Acts 1881 p. 240.

In. Woodward v. McLaren (1885), 100 Ind. 586, 588, this court said:  "So much of the code of 1852 as authorized the taking and enforcing of liens for work done or material

furnished, in the construction or repair of buildings, was continued and remained in force until new legislation on the subject intervened on the 6th day of March, 1883." To the same effect see *Secrist* v. *Board, etc.* (1885), 100 Ind. 59; *Crawford* v. *Powell* (1885), 101 Ind. 421. It does not appear, from the opinion, in the above case that the precise question raised by appellees' counsel here, was there presented, but nevertheless we think the right conclusion was reached.

The act of 1881, was, in the main, a reënactment and revision of the procedure act of 1852. 2 R. S. 1852 p. 27. In the act of 1852, article 36 related to mechanics' liens. 2 R. S. 1852 p. 181. Article 37 related to liens on boats and water craft. 2 R. S. 1852 p. 183. There is nothing in the act of 1881 relating to either subject. It is scarcely believable that it was intended to abolish such liens. Had such intention existed it would have been more appropriately evidenced by expressly repealing the entire act of 1852. Considering the titles and bodies of the acts of 1852 and 1881, including the repealing clause found in the latter act—§867 —we do not think that the mechanics' lien law of 1852 was repealed by the act of 1881.

In the meantime, in 1873 an act was passed, entitled "An Act to give security to persons who contract with railroad corporations to perform work and labor in the construction of railroads." Acts 1873 p. 187. The act gave a lien to "all persons who, by contract with any railroad corporation * * * shall perform work or labor for any such corporation * * * in * * * grading, building embankments or making excavation for the track * * * and * * * who * * * shall build bridges or trestle work * * * which they may have built pursuant to any contract * * * and upon materials furnished therefor." This act is found in the R. S. 1881 under the title Liens of Railroad Contractors. §5301 R. S. 1881.

The revision of 1881 was prepared under the terms of an

act of 1879 (Acts 1879 p. 192) which authorized the judges of this court to appoint three persons to constitute a Board of Revision, whose duty was declared to prepare a compilation and revision of the general statute laws, etc. This court appointed as members of that board James S. Frazer, John H. Stotsenburg and David Turpie—all eminent as lawyers and scholars. Judge Frazer was formerly a member of this court. It is evident that the members of the Board of Revision interpreted the act of 1873 as applying to persons commonly known as railroad contractors. A careful consideration of the body of the act might well suggest the idea that the act was intended to apply to no one else. The title of the act appears to be as broad as the enactment. It was held, however, in the Brennan case (p. 49), that the act did not apply to contractors for the reason that ''work'' and ''labor'', as found in the title and body of the act should be accorded a restricted definition.

It will be noted that this act of 1873 gave no lien on buildings, such as depots, constructed for railroad companies. Counsel for appellants, Pulse and Porter, suggest as the reason for this omission that it was deemed by the legislature that the act of 1852 already gave such lien, and this suggestion appears quite plausible. Our statute (§240 Burns 1908, §240 R. S. 1881) lays down certain rules of construction, the first of which is that words and phrases other than technical ones, shall be taken in their ordinary and usual sense. Regardless of the statute, such rule would obtain as a matter of necessity, because the meaning of words can be determined by no other rule than that of common usage, except where it affirmatively appears that some other meaning is intended. It sometimes happens, however, that in a given locality, a word is taken in a sense peculiar to such place, and in such event, it may be the duty of the courts to give such words a provincial meaning.

How did the people, legislators and courts of Indiana,

386　　SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. *v.* Indianapolis, etc., R. Co.—179 Ind. 356.

previous to 1883, understand and interpret the term "laborers" or "persons performing labor," in the construction of buildings, etc., as found in our mechanics' lien acts? If such term was commonly taken to include only personal manual labor, appellants' contention must fail. In the consideration of this question the fact that this court may never have defined the term in a cause where the question of the general or restricted definition of the word, or term, was involved, cuts no figure. It was not intended that legislation should wait indefinitely on a judicial definition. Such question might never be directly presented. It was not raised here for seventy-five years. Courts do not rightfully make definitions for words; on the contrary they must apply to words the definitions already made by common usage. §240 Burns, *supra.* Of course, when the problem is presented whether a former decision of an appellate court shall be deemed a ruling precedent, a different question is presented. In such case the answer to the question hinges on what was specifically presented for determination in the former decision. The case of *McKinney* v. *Springer* (1843), 6 Blackf. 511, was an action by a contractor to enforce a mechanic's lien on a building. During the ensuing forty years scores of cases, set out in the complaint of appellant, Moore-Mansfield Construction Company, were appealed to this court, involving judgments enforcing mechanics' liens in favor of contractors. A few of these only are here noted.

In *Colter* v. *Frese* (1873), 45 Ind. 96, 104, it was said: "The contractor has the right to a lien, and also to his personal action against the owner. The object of the law was to place the sub-contractor, journeyman, laborer, and material-man upon the same footing with the contractor." The action in the above case was to enforce a lien by subcontractors and a lien was adjudged. In the same cause, the constitutionality of the act (1852) was assailed because the subject-matter was not expressed in the title. This conten-

tion was denied, the court following *Hall* v. *Bunte* (1863), 20
Ind. 304. In neither opinion however is there any discus-
sion of the proper definition of the term "laborer." Appel-
lants say an examination of the record in *Hall* v. *Bunte*,
*supra*, will show that the plaintiff there sued in the capacity
of contractor. In *City of Crawfordsville* v. *Johnson* (1875),
51 Ind. 397, it was said: "There are but two questions in
the case: (1) Can a sub-contractor secure a lien on the
building and ground on which it is erected, by filing the
proper notice * * * ? In the thoroughly and fully
considered case of *Colter* v. *Frese* [1873], 45 Ind. 96, this
question was ruled in the affirmative, and we adhere to that
ruling." In *Hamilton* v. *Naylor* (1880), 72 Ind. 171, 175,
it was said in interpreting the act of 1852. "In perhaps a
majority of cases, the owner contracts with different per-
sons to furnish labor or materials, or both, for the different
parts of a building. Thus, the stone mason may perform a
part, the brick mason a part, and the carpenter and joiner
a part. * * * Each person doing work or furnishing
materials may have his lien. * * * In other cases, the
owner contracts with the builder for the *construction of an
entire building;* and in such case the contractor has a year
from the time the building is completed within which to
bring his action to enforce the lien."

*Nordyke, Marmon & Co.* v. *Dixon* (1881), 76 Ind. 188,
was an action by a corporation against the owner of a build-
ing for a personal judgment and to enforce a mechanic's
lien for materials furnished and labor performed, under a
contract. Inasmuch as a corporation cannot itself perform
labor, in the restricted definition of the word, it could not,
under such view, acquire a mechanic's lien. *Ward* v. *Yar-
nelle* (1910), 173 Ind. 535, 560, 91 N. E. 7. In the Nordyke
case, the trial court rendered a personal judgment in favor
of plaintiff but denied a lien. The reason therefor is not
stated in the opinion. This court reversed the judgment
with instructions to render a judgment enforcing a lien.

388        SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

In that case, if this court had been of the opinion that the appellant corporation contractor was not included within the term "person performing labor" found in the act of 1852, it would have been its duty to have affirmed the judgment, even if the precise question was not presented in appellee's brief. *Stephenson* v. *Ballard* (1882), 82 Ind. 87, 88, was a contractor's suit to enforce a lien. The court said: "Where a person builds a complete and entire building for another, whether he furnishes the materials or not, he may acquire a lien by filing his notice within sixty days after the completion of the building; but where one performs work upon, or furnishes materials for, a part only of a building, he must file his notice within sixty days from the completion of the work or the furnishing of the material." Declarations by the court, similar to those above quoted, made previous to 1883, may be found in many other cases where contractors were claiming liens.

Section 12 of the act of 1883 takes the place of §1 of the railroad lien act of 1873. In *Midland R. Co.* v. *Wilcox* (1890), 122 Ind. 84, 88, 23 N. E. 506, suit was instituted by assignees of contractors for the construction of a railroad, under the act of 1883. In the opinion it is said: "The question which comes first in logical order, is whether the lien asserted under the construction contract exists and is enforceable. * * * The true construction of the * * * act requires the conclusion that the legislature meant to create a lien that should fully *secure contractors, laborers and materialmen.* It is impossible to misconceive the object which the legislature intended to accomplish, and the courts cannot, without a wide departure from principle, *defeat the legislative purpose by a narrow and rigid interpretation.* * * * If the *original contractors* were here the claimants, we should have no doubt as to their right to enforce a lien under the statute." (Our italics.) On January 7, 1909, a few weeks before the decision in the Brennan case, and while the actions of appellants here, were pending

in the lower court, this court said in *Potter Mfg. Co.* v. *A. B. Meyer & Co.* (1909), 171 Ind. 513, 517, 86 N. E. 837, 131 Am. St. 267: "There could be no question that the contractor, J. J. Smith & Co., might have acquired a lien to the extent of the value of the work done, including that done by this labor-saving machine." In *Stephens* v. *Duffy* (1908), 41 Ind. App. 385, 81 N. E. 1154, 83 N. E. 268, it was held that a "sub-subcontractor" was entitled to hold a lien. On petition to transfer the cause to this court, the same was denied March 11, 1908. Appellants cite a multitude of other cases decided by this and the Appellate Court, between 1883 and 1909, which interpret the mechanic's lien law of 1883 as conferring liens in favor of contractors and subcontractors.

When the opinion in the Brennan case was handed down the legislature was in session. It promptly reënacted the act of 1883 under a title sufficiently broad to prevent further dispute, by expressly naming therein contractors, and subcontractors. Acts 1909 p. 295.

The practical construction of a constitutional provision, especially where extending over a considerable period of time, is an important factor in ascertaining the limits of legislative authority by constitutional requirements. *Hall* v. *Bunte, supra; Hovey* v. *State, ex rel.* (1889), 119 Ind. 386, 388, 21 N. E. 490; *McCleary* v. *Babcock* (1907), 169 Ind. 228, 82 N. E. 453, and cases cited.

It is well settled that where a statute is specifically construed by a court of last resort of a state, and afterwards is substantially reënacted, the legislature shall be deemed to have adopted such construction in the new enactment. *Cronin* v. *Zimmerman* (1907), 169 Ind. 75, 76, 81 N. E. 1083, and cases cited. By analogy, it would appear that if a word or term in a statute were susceptible to two meanings, one broad and the other narrow, and continuously for 40 years (1843 to 1883) the courts had enforced the statute in a manner consistent only with the broad definition

390    SUPREME COURT OF INDIANA,

Moore-Mansfield, etc., Co. *v.* Indianapolis, etc., R. Co.—179 Ind. 356.

of the word or term, the legislature, in reënacting the statute, containing the same word or term, intended to give it the broad meaning recognized by the courts.

Article 4, §19 of our Constitution does not require that the title of an act shall contain an index to the several provisions of enactment, or an abstract thereof. *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 232, 68 N. E. 266, and cases cited. For stronger reasons it does not contemplate dictionary definitions of words of different shades of meaning. The office of the title is to apprise the legislators as to what the subject of legislation is, so as to put them on inquiry. The details must be sought in the body of the enactment. *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 169, 74 N. E. 985.

When a word of more than one generally understood meaning is found in a title, the legislator is thereby put on inquiry into the body of the bill to ascertain what meaning is intended in the act. *Parks* v. *State* (1902), 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190; *Schwartz* v. *Board, etc.* (1902), 158 Ind. 141, 63 N. E. 31; *Isenhour* v. *State* (1901), 157 Ind. 517, 62 N. E. 40, 87 Am. St. 228; *State* v. *Bailey* (1901), 157 Ind. 324, 61 N. E. 730, 59 L. R. A. 435; *Bright* v. *McCullough* (1866), 27 Ind. 223.

In our opinion, the word "laborers" as found in our mechanics' lien law previous to March, 1883, was commonly understood by the people, legislators and courts of Indiana to include in its definition, contractors, and subcontractors, as well as common manual laborers, and that consequently the title of the act of 1883 was sufficient, under the provisions of §19, Art. 4 of our Constitution to cover the provisions of §12 of the act. As has been noted heretofore in this opinion, §12 expressly gives contractors and subcontractors a lien.

Whether appellants shall be declared lienholders depends

NOVEMBER TERM, 1912.    391

Moore-Mansfield, etc., Co. v. Indianapolis, etc., R. Co.—179 Ind. 356.

on whether this court deems itself warranted in overruling the Brennan case and those following it, in so far as they hold that contractors and subcontractors are not entitled to liens under the act of 1883. Judge Cooley says in his work on Const. Lim. (7th ed.) 84. "When a rule has once been deliberately adopted and declared, it ought not to be disturbed * * * by the same court, except for very urgent reasons, and upon a clear manifestation of error." We consider the above rule a wise one.

We are urged, for reasons stated, to the conclusion that the ruling in the Brennan case was erroneous, and that the error is clearly manifest. Are the reasons for overruling the former decisions sufficiently urgent to justify such action? It appears that appellants have relied on the protection of the mechanic's lien law, which, as practically interpreted by people, legislatures and courts for at least seventy years, secured them from the loss of the value of labor and materials furnished appellee. If the doctrine announced in the Brennan case is to be upheld, we must see the value of appellee's road enhanced to the extent of appellants' labor and materials furnished, all without recompense. And while the legislature, has restored the law to its former supposed efficacy, the adherence to the doctrine declared in the Brennan case imposes on this State a rule of construction so strict as to seriously embarrass future legislation.

On the whole, we believe the reasons are sufficiently urgent as to fairly require the overruling of those decisions, and therefore the cases of *Indianapolis, etc., Traction Co.* v. *Brennan, supra*, and the subsequently determined cases following it, in so far as they hold that the act of March 6, 1883, as amended, does not include contractors, subcontractors and corporations among those entitled to liens thereunder, are overruled.

Judgment reversed with instructions to Superior Court,

Room 3, to overrule the demurrer of Buskirk and Smith, mortgage trustees, to the plea in abatement, of the Moore-Mansfield Construction Company, and to overrule the demurrers to the cross-complaint of appellants, Pulse and Porter, in the same case; and with instructions to Superior Court, Room 1, to overrule each demurrer to the complaint of Moore-Mansfield Construction Company, and for further proceedings not inconsistent with this opinion.

Myers, C. J., not participating, because of interest in main question decided.

NOTE.—Reported in 101 N. E. 296. Reported and annotated in 44 L. R. A. (N. S.) 816. See, also, under (1) 31 Cyc. 332; (2) 27 Cyc. 341; (3) 1 Cyc. 32; (4) 36 Cyc. 1106; (5, 6) 36 Cyc. 1017; (7) 36 Cyc. 1032; (8) 36 Cyc. 1114; (9) 36 Cyc. 1052; (10) 8 Cyc. 736; (11) 36 Cyc. 1153; (12) 36 Cyc. 1019, 1028; (13) 36 Cyc. 1133; (14) 11 Cyc. 746; (15) 11 Cyc. 749. As to what actions in state courts are abated by prior similar action in federal courts, and the reverse instituted to foreclose the one mortgage, see 82 Am. St. 587. As to constitutional provisions in respect of the sufficiency of the title of a statute, and how such apply, see 64 Am. St. 70. As to limitations on the doctrine of *stare decisis*, see 27 Am. Dec. 631; 73 Am. St. 98. As to the validity of mechanics' lien laws, see 4 Ann. Cas. 620; Ann. Cas 1912 C 339. The question whether contractors or subcontractors are within the protection of statutes giving liens to "laborers," "mechanics," "workmen," and the like is discussed in a note to *Indianapolis, etc., Traction Co.* v. *Brennan* 30 L. R. A. (N. S.) 85, which case is overruled by the reported case. The question suggested, but not decided, in the reported case as to the impairment of the obligation of contract by change of judicial decision, is treated in notes in 5 L. R. A. (N. S.) 860 and 23 L. R. A. (N. S.) 500.